**UNITED STATES of America**

v.

James Paul SCOBLICK, Frank Scoblick, Anthony James Scoblick, and Scoblick Bros., Inc.

Cr. Nos. 12375, 12376.

United States District Court
M. D. Pennsylvania.

Oct. 21, 1954.

See also, 15 F.R.D. 183.

Floyd J. Mattice, Special Asst. to the Atty. Gen., for plaintiff.

Joseph P. Brennan and James E. O'Brien, Scranton, for defendants.

## WATSON, Chief Judge.

The defendants found guilty by verdict of a jury on five counts of aiding and abetting in wilful misapplications of moneys, funds, and credits of the Mayfield State Bank, Mayfield, Pennsylvania, 18 U.S.C.A. § 656, on twenty-three counts of aiding and abetting in making false entries in the books and records of said bank, 18 U.S.C.A. § 1005,[1] on one count of conspiracy to commit offenses against the United States of America, 18 U.S. C.A. § 371, and on thirty-five counts of violating the mail fraud statute, 18 U.S. C.A. § 1341, move for judgment of acquittal[2] and in the alternative for a new trial[3] assigning thirty-nine reasons in support of their motion.

The trial covered a period of twelve days and presents a transcript of one thousand one hundred fifteen pages.

The defendants first contend that the evidence was not sufficient to sustain a conviction.

In considering the sufficiency of the evidence to sustain the verdict of the jury, this Court must take that view of the evidence which is most favorable to the government and must give to the government the benefit of all the inferences which reasonably may be drawn from the evidence. United States v. Toner, D.C., 77 F.Supp. 908. The verdict of the jury must be sustained if there is substantial evidence to support it.

A perusal of the record in the light of these principles satisfies the Court that the verdict of the jury must be upheld as to all counts except Count 5 of Indictment No. 12375. As to the evidence in support of Count 5 in Indictment No. 12375 there is some doubt as to its sufficiency and this doubt should be resolved in favor of the defendants. Consequently, defendants' motion for a judgment of acquittal as to all the defendants on Count 5 in Indictment No. 12375 will be sustained. As to all other counts, it is not necessary to recount the evidence at this time. It is sufficient to say that there was ample substantial testimony supporting no other reasonable hypothesis but that of guilt of the defendants on all counts except Count 5 of Indictment No. 12375.

Unless there was some error in the conduct of the trial the verdict of the jury except as to Count 5 in Indictment No. 12375 must stand. In this Opinion the Court will take up the reasons assigned by the defendants in support of their motion in the order of their alleged occurrence during the proceedings.

1. The Government agreed that a not-guilty verdict be rendered as to all the defendants on one false entry count: Count Number 28 in Indictment No. 12375.

2. Rule 29, Motion for Acquittal, Fed.Rules Crim.Proc. 18 U.S.C.A.

3. Rule 33, New Trial, 18 U.S.C.A.

Defendants' first reason in support of their motion is that the Court erred in refusing to continue the case to the next term in accordance with defendants' motion after government counsel had made a statement[4] which statement, defendants contend, was clearly calculated to induce the sympathy of the jury panel.

 The statement by government counsel, which was interrupted by defense counsel, was made merely to acquaint the Court with his situation anent his not being prepared to enter upon the trial of the case at that time preliminary to requesting a respite for a few days until he would be ready to proceed with the trial.[5] The Court sees no impropriety in that. Nothing in or about the statement purported to elicit or did elicit the sympathy of the jury. When the statement was made, the prospective jurors had not been examined on their voir dire and, of course, none had been qualified or accepted as jurors. If defense counsel believed that government counsel's statement had been prejudicial or nocuous to the defendants, he should have challenged for cause all prospective jurors whose sympathy had been induced by the statement, which could have been ascertained on the voir dire examinations of the jurors. Under the circumstances the statement of government counsel was not prejudicial to the defendants.

 The second reason advanced by the defendants is that the Court erred in its refusal to sever the conspiracy count and in requiring defendants to go to trial on all counts in both indictments. This Court gave its reasons for denying defendants' motion to sever the conspiracy count in an Opinion reported in 15 F.R.D. 183. It has been generally held that in a situation such as existed in this case, the Court, in its discretion, may consolidate for trial two or more indictments, including the matter of an indictment which charges a conspiracy in one count and substantive offenses in other counts.

 The third and fourth reasons advanced by the defendants are that the Court erred in not granting the several motions for mistrial, arising out of the alleged obvious attempts of the United States Attorney to exaggerate the charges by: (a) referring in the opening to "342 checks aggregating four and a third million dollars"; (b) offering testimony as to 74 checks (instead of 342) totaling $840,092.84 (instead of four and a third million dollars); and (c) offering testimony that checks totaling $840,-092.84 were involved in the case when the Government's testimony was to the effect that the amount of the bank's loss was $170,000; and that the Court erred and, in so doing, deprived defendants of a fair and impartial trial, in allowing the Government's witnesses to testify as to the number of checks as 74 and the total thereof as $840,092.84, when the Government's own witnesses testified that

4. Mr. Mattice: "If the Court please, representing the Government, my name is Floyd J. Mattice. I have occasion at this time to make a rather unusual announcement—a statement. In my long experience I have never had an experience like it, of course. I would characterize it as unusual. I was here early in November and had prepared to try this case, and was then prepared to try it when it became necessary for me to go in the hospital in Washington and have a surgical job done on account of a malignant condition in one of my ears. I did not know how much it would amount to. I did not think it would take very long, but I was under surgical care for about a month, and I have been off. duty since the 17th of November, and

returned to duty after the 4th of January.

"In the meantime, I have not been functioning as an attorney in the Department of Justice. A good deal of my time I spent in my home in Indiana, and was entirely out of touch. That is one situation.

"That was complicated by another situation which arose under the retirement law, being seventy years and having December 31 served fifteen years * * *" (objection by Mr. Brennan).

5. Mr. Mattice: "I may say what is coming is a request not for a continuance but a delay of a couple of days until we can be ready to proceed with the trial."

the bank's loss was $170,000. Defendants' contentions are wholly lacking in merit. The declarations made by the attorney for the government in his opening statement contained nothing prejudicial to the defendants. Even if the opening statement had contained matter noxious to the defendants, such matter, if not supported in any way by evidence subsequently introduced, instead of prejudicing the minds of the jury against the defendants, would tend to give the jury an unfavorable impression of the government's case. The very purpose of an opening statement is to apprise the jury how the case developed, its background, and what will be attempted to be proved; but it is not evidence. Williams v. United States, 55 App.D.C. 239, 4 F.2d 432; Nichamin v. United States, 6 Cir., 263 F. 880; Butler v. United States, 4 Cir., 191 F.2d 433. It would be going far indeed to hold that the declarations ostensibly made in good faith by government counsel in his opening statement amounted to misconduct and constituted reversible error. The opening statement of government counsel was not improper.

However, there was no serious failure by government counsel to introduce evidence to prove what he stated in his opening. Copies of the Mayfield State Bank's cash letters in evidence sent to various correspondent banks and to the First National Bank of Jermyn and the First National Bank of Carbondale show that Scoblick Brothers' checks, which were identified as such, aggregated $3,746,118.63. An additional $104,702.80 was evidenced by photostatic copies of Scoblick Brothers' checks and an additional $402,912.88 was identified on the Mayfield State Bank's copies of cash letters of the First National Bank of Jermyn. The total of these items in evidence was $4,253,734.31. It was not claimed by the government that the loss suffered by the bank was the sum total of the 342 checks. It was well understood by everyone, including the jury, that the aggregate was occasioned by reason of the fact that in the float or kiting of checks, numerous checks represented re-

placements and as to the replacements the bank suffered no loss.

■ The fifth and sixth reasons are that the Court erred in refusing defendant's various motions for a new trial arising out of alleged obvious attempts of the United States Attorney to inform the jury that the Mayfield Bank had been forced to close its doors, by reason of defendants' actions and the Court erred in permitting testimony by various government witnesses allegedly calculated to inform the jury that the Mayfield Bank had closed and, in so doing, deprived defendants of a fair and impartial trial. On each occasion when a statement was made from which the jury could infer that the Mayfield State Bank had been forced to close its doors by reason of defendants' actions, the Court either sustained defense counsel's objection or struck out the testimony and instructed the jury to disregard such statement. Cf. United States v. Kushner, 2 Cir., 135 F.2d 668. The defendants' complaint under these circumstances is clearly without merit. The Court felt at the time of the trial that such statements were not material or relevant to the case. Such statements, however, were not prejudicial to the defendants. There are numerous decisions in cases with facts similar to those in the present case in which the Courts make reference to the fact that there was evidence that the bank finally closed its doors. Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624; United States v. Giles, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493.

■ The seventh and eighth reasons advanced by the defendants are that the Court erred in admitting in evidence the purported records of the Mayfield Bank and that the Court erred in admitting in evidence the purported records of the banks with which the Mayfield Bank was in correspondence. Title 28 U.S.C.A. § 1732 provides for the admissibility of books and records made in the regular course of business. That section also contains the following language:

"All other circumstances of the making of such writing or record,

including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."

The records presented in this case were clearly admissible under the Business Records Act and, consequently, there was no error in admitting them into evidence. Cf. United States v. Wicoff, 7 Cir., 187 F.2d 886.

■ The next reason assigned by the defendants is that the Court erred in allowing the Government's witnesses to testify as to the amount of the Bank's loss, the same having no bearing on defendants' guilt or innocence under these indictments. This complaint is clearly without merit. Under the charges in the indictments, the element of specific intent was in issue, and evidence concerning the extent to which the defendants' operations were carried on was proper as being a fact and/or circumstances throwing light upon the matter of with what intent they acted. The evidence showed all the transactions and the amount of money involved in each. It was a mere matter of computation to ascertain the bank's total loss. The witness who gave the total merely saved the jury the task of making a mechanical addition.

The tenth reason assigned by the defendants is that the Court erred in allowing the misapplication counts 1 to 4, inclusive, in Indictment No. 12375, to go to the jury, there having been no evidence that on the several dates mentioned in the indictment any money or funds left the bank. This is clearly without merit. As to Count 1, the evidence shows that $325 left the bank on the date mentioned in the indictment and the defendants received such amount; as to Count 2, $250; as to Count 3, $12,551.30; and as to Count 4, $2802.14.

The next reasons are that the Court erred in allowing the several false entry counts, to wit, No. 6 to 29, inclusive, (excluding Count 28) in Indictment No. 12375, to go to the jury, there having been no evidence that the particular entries were false, within the terms of the False Entry Statute, or that the defendants aided or abetted in their entry, or even knew of the entries being made and the Court erred in allowing the several false entry counts to go to the jury, in view of the fact that evidence proved conclusively that Michael Senio and not the defendants aided and abetted in their entry. The particular entries were false within the terms of the False Entry Statute. Michael Senio caused the false entries to be made and the defendants aided and abetted Senio.

■ It is true that an entry which reflects an actual transaction as it occurred is not a false entry. Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481; Twining v. United States, 3 Cir., 141 F. 41. For example, where credit has been given by an officer of the bank to a third person, although such credit was not authorized and was a fraud on the bank, an entry accurately reflecting the credit given is not a false entry. On the other hand, an entry on the books of the bank which is intentionally made to represent what is not true or does not exist, would constitute a false entry.

■ The balance owing on a deposit is the aggregate amount of the deposits, less payments made to the depositor or upon its authorization. The act of a third person not authorized or ratified by the depositor cannot generally affect the liability of the bank to the depositor. The liability of the bank to the Russian Brotherhood Organization and its credit with the bank remained exactly the same after, as before such entries were made or caused to be made by Senio. The Court concludes that the entries charged in Counts 6–29, inclusive, (excluding Count 28) in Indictment No. 12375 did not reflect true balances of the Russian Brotherhood Organization's account on the dates mentioned in the various counts, and that they constituted false entries within the meaning of the statute.

The next reason assigned by the defendants in support of their motion is

that the Court erred in allowing the conspiracy count to go to the jury in view of the Government's alleged failure to prove facts from which the jury could find a conspiracy or preconceived plan. There was abundant evidence showing the concert of action and the joint criminal enterprise. Under all the evidence and circumstances, it is patent that the defendants, with Michael Senio, entered upon a scheme to get money from the Mayfield State Bank to which money they were not entitled. They began by means of unauthorized loans and when that could no longer be carried on, the scheme of putting insufficient fund checks through distant correspondent banks was devised. When that got to a point where it was toppling by reason of its own weight, they began the device of charging the worthless checks into the Russian Brotherhood Organization's account. The operations, all along, were to cover up and conceal from the directors and officers of the bank, the bank examiners from the Commonwealth of Pennsylvania, and from the Federal Deposit Insurance Corporation, what was going on.

 The next alleged error assigned by the defendants is that the Court erred in allowing the mail fraud counts, No. 1 to 35, inclusive, in Indictment No. 12376, to go to the jury, there being no evidence of any scheme to defraud, or any evidence of any knowledge on the part of James, Frank, or Anthony Scoblick that the mails would be used, and further for the reason that the only evidence of mailing was custom or usage in the bank. The elements of the offense are (1) a scheme to defraud and (2) the mailing of a letter for the purpose of executing the scheme. There was substantial evidence of a scheme to defraud the bank. Here we have a course of action continued over a period of months; checks knowingly drawn on an inadequate balance and therefore not good checks in the usual sense. The use of the mails was an integral and essential part of the required delay. Although it is not necessary that the scheme contemplate

the use of the mails as an essential element, the scheme here involved actually embraced it. See Decker v. United States, 4 Cir., 140 F.2d 378, 151 A.L.R. 754. When one does an act with knowledge that use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, he "causes" the mails to be used. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358.

 Defendants relying upon Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88, further argue that the fraud, if any, had been consummated once the checks were cashed; that the use of the mails was not for the purpose of executing any scheme or artifice. The Court does not agree. Obviously the factual situation here is materially different from that presented in the Kann case. As to the law see United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359; Decker v. United States, supra; United States v. Citrin, D.C., 58 F.Supp. 766; Mitchell v. Hunter, 10 Cir., 152 F.2d 959.

 The next reason advanced by the defendants is that the Court erred in instructing the jury "that there can be little question that the Mayfield State Bank was a corporation under and doing business pursuant to the laws of the Commonwealth of Pennsylvania, the deposits of which were insured by the Federal Deposit Insurance Corporation", there being no competent evidence that at the times set forth in the indictments the Mayfield Bank was a Banking Corporation "chartered under and doing business pursuant to the laws of the Commonwealth of Pennsylvania", as alleged in said indictments. Rule 30 of the Federal Rules of Criminal Procedure provides in part:

"* * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

No objection was made by defense counsel to the above oral charge. A failure of defense counsel to record an exception to such portion of the charge constituted a waiver. Fredrick v. U. S., 9 Cir., 163 F.2d 536; U. S. v. Sutter, 7 Cir., 160 F.2d 754.

■ However, there was sufficient competent evidence to show that the Mayfield State Bank was a corporation under and doing business pursuant to the laws of the Commonwealth of Pennsylvania. The first and only President of the Mayfield State Bank, John A. Hart, testified that the bank was incorporated as a banking institution under the laws of the State of Pennsylvania. The bank's charter, which was identified by Mr. Hart, was introduced into evidence, and Mr. Hart testified that it had been received at the bank in June 1923, and was in the bank continuously until 1953. Various items of evidence and testimony, either brought out in the direct examination or in the cross-examination of government's witnesses, established the fact that the bank was a Pennsylvania State Bank on the dates the alleged offenses were committed. Evidence of the actual existence of a bank and of acts done by an agent of the bank is sufficient evidence of the legal incorporation. In re Van Campen, Fed.Cas.No.16,835. Wigmore in his treatise on Evidence states in Section 1249: " * * * the fact that a corporation exists may be proved without the corporate charter." Consequently the Court was justified in stating what it did to the jury.

■ The next reason is that the Court erred at various points during the trial and in the charge, in placing undue weight on the fact that Michael Senio had entered pleas of guilty, and thereby deprived the defendants of a fair and impartial trial. To the foregoing defense counsel made no objections and took no proper exceptions. It was entirely proper that the jury be informed that Senio had pleaded guilty to the charges. The Court in its charge told the jury:

"One witness, Michael Senio, testified, who by his own confession is an accomplice. The testimony of an accomplice in crime should be received with caution, and you should carefully scrutinize the testimony of such accomplice before giving it much weight, but there is no rule of law forbidding a conviction on such testimony * * *"

"The fact that Michael Senio has pleaded guilty to all counts in the indictment does not mean that the defendants, or any of them, are guilty. The guilt of the defendants other than Senio must be found from the evidence in the case * * *"

■ As to the latter statement by the Court, the Court was expressing in more explicit language defendants' tenth requested point for charge. A defendant in a criminal case cannot complain of an alleged error which he himself has invited. Shields v. U. S., 3 Cir., 17 F.2d 66.

The Court further instructed the jury:

"With respect to aiders and abetters, you are charged that before such aiders and abetters can be convicted of aiding and abetting as charged in any count, you must first find that the principal, that is, Senio here, was in fact guilty of a violation of the statutes in question by misapplying the bank's funds as charged in that count, or by making false entries as charged in that count."

■ The Court sees no merit in this assignment of error. The Court did not, at any time during the trial or in its charge, place undue emphasis on the fact that Michael Senio had pleaded guilty to the charges.

■ The next reason is that the Court erred in refusing to charge that Senio's credibility might be affected by hope of a lighter sentence, he having pleaded guilty and testified for the Government. It would be improper for a Court to instruct a jury in the manner

in which defense counsel requested. The matter of the sentence which Senio will receive is entirely for the Court, and it certainly cannot be asserted that the Court, in any way, is holding out any hope of a lighter sentence to Senio. In such a situation it is proper for the Court, as it did in this case, to refer to the fact that the witness had pleaded guilty and was an accomplice and to instruct the jury that the testimony of an accomplice should be received with caution. The Court properly charged the jury as to what to consider in judging the credibility of a witness, among which was his interest in the case.

■ The next alleged error assigned by the defendants is that the Court erred in its charge regarding the presumption of innocence. Again no objection was made by defense counsel to this portion of the charge before the jury retired to consider its verdict as is required by Rule 30 of the Federal Rules of Criminal Procedure. Such failure constituted a waiver.

■■ The Court told the jury:

"I have said to you that these defendants have the same rights as all other defendants. Under our system of law these defendants, like all other defendants in criminal cases, came into court clothed with the presumption of innocence. These defendants have the right to be presumed to be innocent until they are proven guilty beyond a reasonable doubt. In other words, no defendant can be convicted unless his guilt is established beyond a reasonable doubt. When these defendants came before you for trial they were innocent men, and the burden of proof is not upon them to prove themselves innocent, but upon the Government to prove that they are guilty and guilty beyond a reasonable doubt * * * *"

This portion of the charge was entirely correct and free from error.

■ The next reason is that the Court erred in its instructions to the jury, in failing to define adequately the various crimes charged against the defendants; and this alleged error was not corrected by instructing the jury that its members may examine the indictments in the jury room. Defense counsel made no objections and took no proper exceptions to this phase of the charge and, likewise, did not request the Court at the conclusion of its charge to define more explicitly the crimes charged. The defendants further argue that the Court erred in not charging that there had to be a specific intent on the part of the defendants to defraud the bank before the defendants could be found guilty. This complaint is without merit. It is sufficient to say that the Court defined adequately and explicitly the various offenses charged against the defendants.[6]

6. The Court (in its Charge): "There are two indictments in this case. On is No. 12375 and contains thirty counts; the other is No. 12376 and contains thirty-five counts. It is convenient to the Government and after all I think convenient to the defendants in a criminal case, if they are to be charged with a series of violations of a similar nature over a period of time, for all the violations to be put in one indictment and let them all be tried at one time rather than take them up one at a time and have so many different trials. That is the reason the law permits several charges of a similar nature to be combined in one indictment, but each count in the indictment, or each offense, must be charged separately. I shall refer to Indictment No. 12375.

"In the first paragraph of each count it is charged:

"'That at all times hereinafter mentioned, defendant Michael Senio was an officer, agent and employee, to wit, director and cashier of the Mayfield State Bank, Mayfield, Pennsylvania, a banking corporation chartered under and doing business pursuant to the laws of the Commonwealth of Pennsylvania, the deposits of which were then and there insured by the Federal Deposit Insurance Corporation.'—an agency of the Government * * * The second paragraph in Counts 1 to 5, inclusive, are similar in that they charge that Michael Senio

After a careful consideration of the arguments and briefs of counsel, I conclude that the remaining reasons assigned by the defendants in support of their motion

unlawfully, knowingly and fraudulently and with intent to injure and defraud the said Mayfield State Bank did wilfully misapply said moneys, funds and credits of said Mayfield State Bank which had been entrusted to his care and custody, and describes the manner in which the misapplication was made. You may have, and should have, the indictments with you in the jury room during your deliberations, and may yourselves examine them. As to whether the evidence supports the charges of misapplication as alleged in said paragraphs, you must find from the evidence in the case * *

" * * * To convict on charges of misapplication of bank funds, it must be shown that some moneys, funds, or credits of the bank, not necessarily the exact amount alleged, have been paid out by the bank on the date and in the manner set forth in the indictment.

"I say to you also that a renewal of the item involved in the alleged misapplication is not another misapplication, and where a bank's money is misapplied by an officer or employee of the bank with intent to injure and defraud the bank, subsequent restitution will not excuse the previous crime.

"The second paragraph in Counts 6 to 27, inclusive, and in Count 29, are similar in that they charge in substance that on a certain date Michael Senio did unlawfully, knowingly, and wilfully and with intent to injure and defraud said Mayfield State Bank, and to deceive the officers of said bank and the Federal Deposit Insurance Corporation, and agents and examiners appointed to examine the affairs of the said bank; made and caused to be made a false entry in a certain book of said bank used in said bank in transacting the banking business, and alleges the manner in which said false entry was made.

"The law of the United States, Title 18 U.S.C.A. Section 1005, prohibits any officer, director, agent or employee of an insured bank from making any false entry in any book, report or statement of such bank with intent to injure or defraud such bank or to deceive any officer of such bank or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, and provides that an insured bank includes any state bank, the deposits of which are insured by the Federal Deposit Insurance Corporation.

"It will be for you to determine from the evidence whether Senio made or caused to be made false entries as prohibited by the statute and as charged in the paragraphs referred to * * * I charge you that it is the law that in order to find that any false enries have been made in the records of the Mayfield State Bank, it is necessary for you to find that the entries on the bank records were false and were intended to mislead and deceive * * *

"The third paragraph in Counts 1 to 5, inclusive, and in Counts 6 to 27, inclusive, and in Count 29, are similar in that they charge that the defendants here, James Paul Scoblick, Frank Scoblick, Anthony James Scoblick and Scoblick Bros. Inc., did aid, abet, counsel, induce, and procure the said Michael Senio as cashier of the Mayfield State Bank to knowingly, fraudulently and unlawfully commit the acts of misapplication and false entries as charged in the said second paragraphs of said counts. The law of the United States, Title 18 U.S.C.A. Section 2(a), contains the following provision:

" 'Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.'

"With respect to aiders and abetters, you are charged that before such aiders and abetters can be convicted of aiding and abetting as charged in any count, you must first find that the principal, that is, Senio here, was in fact guilty of a violation of the statutes in question by misapplying the bank's funds as charged in that count, or by making false entries as charged in that count.

"If you are satisfied that Senio was actively in charge of the bank mentioned in the indictment, that is, the Mayfield Bank, and that he did unlawfully, wilfully, and feloniously misapply moneys, funds, and credits of said bank, or made false entries as charged in the indictment, you cannot find the defendants here on trial guilty as aiders and abetters unless you are satisfied from the evidence that they with like intent unlawfully, wilfully, and feloniously consented and participated in the unlawful and criminal acts of said Senio and contributed to their execution.

"You are also instructed that the defendants here on trial in order to be guilty as aiders and abetters must not only have the guilty knowledge of the

are without merit and require no discussion.

It is the conclusion of this Court that the record shows no error in the trial that was prejudicial to the defendants. The verdicts except as to Count 5 of Indictment No. 12375 were not contrary to the law. Defendants received a fair trial and the verdicts except as to Count 5 in Indictment No. 12375 were supported by substantial evidence. Defendants' motion for judgment of acquittal except as to Count 5 of Indictment No. 12375 will be denied. Defendants have failed to advance any valid reasons why a new trial should be granted and, therefore, defendants' motion for a new trial will be denied.

An appropriate order will be filed herewith.

acts of Senio but must actually have encouraged or aided such action.

\* \* \* \* \* \*

"I shall now refer to Indictment No. 12376. This indictment charges the defendants with having devised a scheme or artifice to defraud the Mayfield State Bank, and obtaining money or property by means of false and fraudulent representations and promises and for the purpose of executing such scheme or artifice to defraud and to obtain money by means of false promises, representations, and pretenses and attempting to do so, caused to be placed in an authorized depository for mail matter letters addressed to Tradesmen National Bank and Trust Company, Philadelphia, Pennsylvania, Chase National Bank, New York, New York, and Manufacturers Trust Company, New York, New York, to be sent and delivered by the Post Office establishment of the United States. There are 35 counts in the indictment and each count charges the causing to be placed in an authorized depository for mail matter a letter addressed to one of the banking institutions named on a certain date. The indictment is based upon an alleged violation of Title 18 U.S.C.A., Section 1341, which provides in part as follows:

" 'Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises \* \* \* for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent out or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be \* \*.'

" \* \* \* To sustain a conviction of having used the mails to promote fraud under the Statute to which I have referred, it is necessary that there be proof of a devising of the scheme or artifice to defraud. It is not necessary that there be proof that any one was defrauded, and, in a prosecution for using the Post Office establishment in furtherance of the scheme to defraud, it is not necessary to show that any one has been in fact defrauded, nor is it necessarily conclusive against the fraudulent nature of the scheme that those named in the indictment as among those intended to be defrauded have not been so defrauded in fact. The gist of the offense under the section to which I have referred, is the mailing of the letter or letters, or the writing or writings, in the execution of the scheme to defraud, or the use of the mails as a material part of carrying out the scheme to defraud. The mailing of any letter or writing for the purpose of executing the fraudulent schemes is what the statute makes an element of the offense.

" \* \* \* But in order to convict a defendant of using the mails to defraud, you must find from all the evidence and circumstances in the case that that person knew that the mails would be used."