**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald BARCLAY, Defendant-Appellant.**

No. 76–1689.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1977.

Decided Aug. 18, 1977.

find that defendant has not made a sufficient showing of fraud to warrant relief from the judgment.

George J. Cotsirilos, William J. Martin, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., Richard C. Leng, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and WOOD, Circuit Judges, and SHARP, District Judge.*

PELL, Circuit Judge.

The defendant-appellant Donald Barclay was charged in a nine-count indictment with conspiracy and aiding or abetting the misapplication of bank funds and false entries on bank records, in violation of 18 U.S.C. §§ 2, 371, 656, and 1005, and of knowingly making false statements and reports for the purpose of influencing the actions of a national bank upon a loan, in violation of 18 U.S.C. § 1014. The Government voluntarily dismissed the § 1014 count (Count Nine) prior to trial. At the close of all the evidence, the court directed a verdict of acquittal on five of the eight remaining counts. The case was submitted to the jury on the conspiracy count (Count One), one count of aiding and abetting a misapplication of bank funds (Count Two), and one count of aiding and abetting a false entry (Count Eight). The jury convicted Barclay only on the false entry violation charged in Count Eight of the indictment.[1] Subse-

---

* The Honorable Allen Sharp, Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. Count Eight of the indictment stated:

The March 1975 Grand Jury further charges:

On or about May 14, 1970, in the Northern District of Illinois, Eastern Division, Stanley Johnson, not named as a defendant in this indictment, being an officer and employee of

quently, Barclay was placed on probation for a period of five years, the first 120 days to be spent in the custody of the Attorney General on a work release program, and ordered to make restitution to the Steel City National Bank for the balance owing on the loan involved in Count Eight.

Because of the manner in which we resolve this appeal, a full statement of the transactional facts regarding Barclay's dealings with the Steel City National Bank is unnecessary. It is sufficient to state that Barclay, President of Rittenhouse Investment Inc., (Rittenhouse) needed loans in order to satisfy the liquidity requirements of the Chicago Mercantile Exchange applicable to the corporation. Neither Barclay nor Rittenhouse could borrow a sufficient amount from the bank without going over the bank's lending limit. On May 14, 1970, the bank ostensibly lent $35,000 to Charles Wasserman, a Rittenhouse commodity salesman. Wasserman signed a note for the amount of the loan, and Barclay signed guarantees for the loan personally and on behalf of Rittenhouse. Barclay and his wife also executed an assignment of the beneficial interest in their residence as collateral for the Wasserman loan. Stanley Johnson, vice-president of the bank, requested Wasserman to cash the check at another bank. Wasserman took the check to the National Boulevard Bank where he had an account, deposited it, and wrote a certified check to Barclay for $35,000 so that Rittenhouse could meet the Exchange's latest financial requirements. The Wasserman loan resulted in a bank Interview and

Memorandum Sheet for Charles Wasserman which read:

> 5/14/70 SJ Loaned him $35,000 for 30 days unsecured at 9½%. He may need an additional 30 or 60 days extension but he expects to have in [sic: it] paid in full not later that [sic: than] August, 1970.

The entry of information on this Interview Sheet was the subject of the § 1005 charge set forth in Count Eight.

On appeal, Barclay argues that he was deprived of a fair trial by virtue of the district court's refusal to define specific intent for the jury, the court's improper instruction regarding the elements of the offense of making a false entry, and the court's failure to properly instruct the jury with regard to the essential elements of the offense of aiding and abetting. Additionally, Barclay argues that the Government failed to prove that the principal, Stanley Johnson, actually made the entry on bank records, thus precluding an aiding and abetting conviction, that the entry recorded on the bank memorandum sheet was literally true, and that no logical distinction can be drawn between the court's grant of judgments of acquittal on three counts of the indictment and its denial of the judgment of acquittal on Count Eight.

I

■ The record establishes that both the Government and the defendant tendered the La Buy § 4.04 "specific intent" instruction, but that the district court refused to give that instruction.[2] On appeal, the

---

the Steel City National Bank, Chicago, Illinois, did wilfully, knowingly, and with intent to injure and defraud the said Bank, make and cause to be made in the Interview and Memorandum Sheet of said Bank in the name of Charles Wasserman, a false entry opposite the heading May 14, 1970, a wit: a statement indicating the loan proceeds in the amount of $35,000 were to be used by Charles Wasserman, whereas, in truth and in fact, as the defendant then well knew, the proceeds of the said loan were to accrue to the use and benefit of Rittenhouse Investment Inc.

In violation of Title 18, United States Code, Section 1005, and

Donald Barclay defendant herein, did, knowing the foregoing,

wilfully aid, abet, and procure the commission of the above-described offense by Stanley Johnson.

In violation of Title 18, United States Code, Sections 2 and 1005.

2. The duality aspect of the tender of instructions is not without precedent. Thus, in *United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975), both the Government and the defendant tendered instructions defining reasonable doubt, although the instructions so tendered there were not identical as in the case at bar. In *Lawson*, this court held that the failure of the court to give such a definitional

Government concedes that it was required to prove that Barclay shared the intent of the principal, Stanley Johnson, and that the intent to injure or defraud is the specific intent required by 18 U.S.C. § 1005.[3] See *United States v. Pollack,* 503 F.2d 87 (9th Cir. 1974). The Government contends, however, that, when the instructions given in the instant case are examined, it is apparent that the trial judge accurately instructed the jury concerning the essential elements of the crime of aiding and abetting false statements by a bank official. In its brief to this court the Government omits to mention that it tendered, and the district court refused an instruction substantially incorporating La Buy § 4.07.[4] Instead it

argues that its Instruction No. 32, which was given by the district court,[5] adequately stated the essential elements necessary to convict Barclay of aiding and abetting Johnson in violating 18 U.S.C. § 1005.

■ The trial judge refused four of the defense-tendered instructions and three of the Government-tendered instructions which focused attention on the degree of specific intent necessary to find Barclay guilty. We have found no instruction from our examination of the record which, standing alone, adequately explained the specific mental state which the Government had to prove beyond a reasonable doubt. Although Government Instruction No. 32 does

---

instruction was not reversible error. Nevertheless it does appear to us that when both sides to litigation deem a particular instruction to be necessary, one from the point of view of the theory of defense and the other from the point of view of obviating possible error, that the trial judge should exercise considerable caution in declining to give the instruction tendered by both sides, particularly when both instructions are identically worded.

  La Buy § 4.04 reads as follows:
    The crime charged in this case requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, (or knowingly failed to do an act which the law requires,) purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case (and from similar prior crimes and transactions).
  33 F.R.D. at 550–51.

3. 18 U.S.C. § 1005, in pertinent part, provides:
    Whoever makes any false entry in any book, report, or statement of such [national or insured] bank with *intent to injure or defraud* such bank, or any other company, body politic or corporate, or any individual person, or *to deceive* any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System— Shall be fined not more than $5,000 or imprisoned not more than five years, or both. [Emphasis supplied.]

4. Government Instruction No. 6 read as follows:
    The phrase "intent to defraud" used in the crimes charged means that the act was done knowingly with a specific purpose to deceive in order to cause financial loss to another or financial gain to oneself or another.
  La Buy § 4.07 is virtually identical, providing:
    The phrase "intent to defraud" used in the crime charged means that the act was done knowingly with the specific purpose to deceive in order to cause financial loss to another or financial gain to one's self.
  33 F.R.D. at 555. The comment to this particular instruction points out that the phrase "intent to defraud," while not used as widely as the words "knowingly" or "wilfully" in the federal crimes included in Title 18 of the United States Code does appear in numerous crimes, thus warranting a separate instruction in the chapter on Act and Intent. *See* 33 F.R.D. at 555.

5. As read to the jury, Government Instruction No. 32 provided:
    The Government is required to prove three essential elements in order to establish the offense of aiding and abetting the making of a false statement, as charged in Count VIII of the indictment.
    First: that Stanley Johnson caused a false entry to be made in the interview and memorandum sheet of Charles Wasserman;
    Second: that in causing the making of that entry, Stanley Johnson *had the intent to injure or defraud the bank;* and
    Third: that the defendant Donald Barclay did knowingly aid and abet Stanley Johnson in causing the false entry to be made. [Emphasis supplied.]

state as an essential element that Barclay must have knowingly aided and abetted Johnson, there is no explanation that Barclay must have acted with the required specific intent to defraud or injure the bank or aid Johnson in doing so. The Government candidly admits that because there can be no violation of 18 U.S.C. § 2 alone, the intent required is defined by the substantive offense and is to aid or abet its commission. *See Snyder v. United States,* 448 F.2d 716 (8th Cir. 1971). As the Eighth Circuit later explained, "[t]he defendant must act or fail to act with the specific intent to facilitate the commission of a crime by another." *United States v. Bryant,* 461 F.2d 912, 920 (8th Cir. 1972).

▮ In the opinions articulating this "specific intent" requirement the trial judge had ready access to an acceptable formulation of a "specific intent" instruction. Nonetheless, the trial judge not only refused the jointly requested La Buy § 4.04 but stated he deemed inapplicable to the case the Government's formulation of La Buy § 4.07. *See* note 4 *supra.* Denial of the former instruction apparently rested in large part upon the court's view that the traditional distinction between "general intent" and "specific intent" is less than comprehensible.[6] The difficulty of formulating clarifying instructions so as to avoid incomprehensibility is one which we readily recognize. "Because of the very commonness of [some pertinent] words, the straining for making the clear more clear has the trap of producing complexity and consequent confusion." *Lawson, supra,* 507 F.2d at 442. Nevertheless, where the articulation of the law is essential to the trial's propriety, the task cannot be avoided, as difficult as it may be. It would be, we reluctantly admit, unrealistic to think that every juror understands every concept to which he or she is exposed in the court's charge. The best we can do under our adversary system is to see that the necessarily applicable law is made available to the jury in as understandable as possible form.

The denial of the latter instruction, La Buy § 4.07, rested on the judge's view that the facts made it an unacceptable part of the jury charge. Still, as the trial judge himself recognized, the court had ample power to reformulate in comprehensible English the essential requirement of an intent to injure or defraud the bank or to deceive any of its officers.

▮ We think the district court's refusal of instructions bearing on both "specific intent" and the "intent to defraud" led to a jury charge which failed to provide adequate criteria by which the jury could determine whether or not both Johnson and Barclay had the requisite specific intent to injure or defraud the bank. In fact, it appears that the jurors did experience some confusion over the "intent" requirement. After more than eleven hours of actual deliberation, the jury sent out written questions, one of which asked for a definition of intent. At that point, the district court replied

> The word "intent" refers to the purpose one has in performing an act. The instructions previously given you describe the intent required under each Count of the indictment, and I do not believe I can add anything to what I have already said.

Assuming that the Government's assertion that the words "intent" and "purpose" express the same thought and idea finds support in the decided cases, we do not agree that the court's supplemental charge was both accurate and complete. We agree with the defendant-appellant that the court's reply to the jury's question reinforced the basic misconception that Barclay

**6.** The transcript discloses the following reason for denial:

> As I indicated [at an informal off-the-record instructions conference], I do not think that in the La Buy instruction, the courts distinguish between specific and general intent as comprehensible——It is not comprehensible to me and I do not think it would be to a jury.

> Now, in the course of going over the instructions today on the record, we will review the question of whether the matter of intent is adequately covered. If it is not, we will cover it in an instruction that will be phrased in understandable English.

could be found guilty of aiding and abetting a § 1005 violation by merely knowingly securing a loan from Johnson without also knowing that Johnson was going to make a false entry with the specific intent to injure or defraud the bank and without Barclay himself having the specific intent to injure or defraud the bank, commit a crime, or aid Johnson in committing a crime.

The situation might have been corrected somewhat if the judge had not refused to give Government Instruction No. 6 or some reformulation thereof. In one colloquy with the attorneys, the trial judge stated that

> the real crux of this case is going to be a finding of the conspiracy count with specific reference to what the facts of this case are, finding of false entries, *the intent to defraud.* [Emphasis supplied.]

Having recognized that the question of intent to defraud was of particular significance in the case, the trial judge subsequently determined that the Government-tendered version of La Buy § 4.07—the standard "intent to defraud" instruction—was inapplicable. There is nothing in the record which either explains or justifies the judge's shift in position.

The Government argues that *United States v. Scoblick,* 124 F.Supp. 881 (M.D.Pa. 1954), *aff'd,* 225 F.2d 779 (3d Cir. 1955), supports affirmance of the instant conviction. We do not agree. In that case, Scoblick was convicted of aiding and abetting a violation of 18 U.S.C. § 1005. Even though the term "specific intent" was never formally included in the instructions of the trial court,[7] the appellate court affirmed the judgment of conviction. The Government argues for a similar affirmance under the circumstances of this case. We note, however, that in the *Scoblick* case, the trial judge did not limit his charge to a mere recitation of the full language of 18 U.S.C. § 1005, but also informed the jury that it must determine from the evidence whether Senio, the charged principal, had caused false entries to be made. In elaborating upon the bare language of the statute, the trial judge charged that in order to find that any false entries had been made, the jury must find that "the entries on the bank records were false and were intended to mislead and deceive * * *" 124 F.Supp. at 889 n.6. As to the charged abetters, one of whom was Scoblick, the trial judge devoted two paragraphs of his charge to the task of explaining for the jury that they could not find the defendants guilty unless satisfied that they acted with the same intent as had Senio, the indicted principal.[8]

Thus, the Third Circuit's affirmance of the *Scoblick* case depended in large measure on the fact that the trial judge had instructed the jury that for the abetters' guilt to be established they must have shared in the principal's intent to "unlawfully, wilfully, and feloniously" make false entries in the bank's records. In that case, unlike the present one, the absence of a "specific intent" instruction such as La Buy § 4.04 was mitigated by a clear delineation of the essential elements of the offense in the instructions as a whole. We think that the pertinent portion of the *Scoblick* opinion, *supra,* 225 F.2d at 783–84, cannot fairly be read as ruling on the specific arguments which Barclay presses in this case.

The Government's position in the present case calls into question the traditional dis-

---

7. We, of course, do not mean to suggest that there is any particular magic or salvation in using the word "specific" per se. The important aspect is that the total term of "specific intent" be defined and its applicability to the case be made clear.

8. "If you are satisfied that Senio was actively in charge of the bank mentioned in the indictment, that is, the Mayfield Bank, and that he did unlawfully, wilfully, and feloniously misapply moneys, funds, and credits of said bank, or made false entries as charged in the indictment, you cannot find the defend-

ants here on trial guilty as aiders and abetters unless you are satisfied from the evidence that they *with like intent* unlawfully, wilfully, and feloniously consented and participated in the unlawful and criminal acts of said Senio and contributed to their execution.

You are also instructed that the defendants here on trial in order to be guilty as aiders and abetters must not only have the guilty knowledge of the acts of Senio but must actually have encouraged or aided such action." 124 F.Supp. at 889 n.6. [Emphasis supplied.]

tinction between "general intent" and "specific intent." We recognize that many commentators have regarded these jurisprudential concepts as awkward and unhelpful. Nonetheless, we cannot agree with the Government that the trial court's instructions on intent were complete. Only in Instruction No. 32 was the jury informed that the principal, Stanley Johnson, must have had the intent to injure or defraud the bank. Nowhere in the jury charge do we find any language specifying the criteria by which that particular mental state must be measured. As previously noted, both the Government and the defense tendered instructions seeking to make the statutory language more comprehensible to the jury, but the trial judge consistently rejected any such attempts to clarify the statutory language. Finally, we note that the Government, at the trial level although not at this court, took the position that the judge's rejection of the jointly-requested La Buy § 4.04 bordered on reversible error.

■ Under *Bryant, supra,* 461 F.2d 912, we are of the opinion that a reversal of the conviction is required. We have viewed the instructions given herein, and we do not believe that the jury was properly advised regarding the intent which Barclay must have entertained in order to violate 18 U.S.C. §§ 2 and 1005. It may well be true that Congress would be well advised to reformulate the criminal code in a manner comparable to the Model Penal Code promulgated by the American Law Institute. Such legislative action would remove from criminal jurisprudence some of the problems which the traditional "general-specific" criminal intent analysis engenders. Absent such legislative action, however, both the Government and the defendant can rightly insist that the jury be adequately apprised of the mental state legislatively defined as an element of the crime.

## II

■ Because the inadequate jury charge requires a reversal, we need not consider nor rule upon Barclay's other claims of reversible error. We do note Barclay's contention regarding an arguable inconsistency between the court's grant of judgments of acquittal on Counts Three, Four, and Seven and its denial of a judgment of acquittal as to Count Eight. He argues that this court should mandate a judgment of acquittal as to the latter count. The district court judge, after reflection on his ruling, observed on the record that the more he thought about Count Eight, the more he thought it was a valid count. Thus, the record establishes that the trial judge was advised as to the possibility of an inconsistent ruling, reflected on that claim of error, and persisted in his ruling. Although the case may be a close one, based upon our examination of the evidence in this case, and bearing in mind that from the sufficiency viewpoint the evidence and all reasonable inferences therein must be regarded in the light most favorable to the Government before a directed verdict would be authorized, we are unable to conclude that a properly instructed jury might not have convicted Barclay without the verdict being subject to challenge on the ground of insufficiency.

For the reasons hereinbefore stated, the judgment of conviction is reversed and the cause is remanded for a new trial.

REVERSED and REMANDED.