**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John ARAMBASICH,**
**Defendant-Appellant.**

No. 78–1658.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1979.

Decided May 3, 1979.

Rehearing and Rehearing In Banc
Denied June 29, 1979.

Michael B. Nash, Burke, Nash & Shea, Ltd., Chicago, Ill., for defendant-appellant.

Ludwig E. Kolman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before TONE and BAUER, Circuit Judges, and MORGAN, District Judge.*

TONE, Circuit Judge. ·

John Arambasich appeals from convictions under the Hobbs Act for extortion and conspiracy to extort, raising only two issues, both concerning the district court's jury instructions: (1) whether the court erred in refusing to give a stock instruction on specific intent, and (2) whether the court erred in refusing to give the "two-conclusion" instruction defining reasonable doubt. We find no error and affirm the judgment.

The facts can be stated briefly for purposes of this appeal. The defendant's brother, Edward Arambasich, was the business agent of Local 444 of the International Association of Bridge, Structural, and Ornamental Ironworking Union between May, 1971 and March, 1975. The business agent had significant *de jure* and *de facto* powers: It appears from the record that he had power to determine which members of the local would work on a particular job. *See also United States v. Kramer,* 355 F.2d 891, 894–895 (7th Cir.), *vacated in part and cert. denied,* 384 U.S. 100, 86 S.Ct. 1366, 16 L.Ed.2d 396 (1966). Any firm awarded a contract within the local's jurisdiction was required either to hire the local members assigned to the job by the business agent or to secure his permission to use its own men. If contractors were to avoid labor problems, they found it necessary to obtain the business agent's approval before doing any work within the local's jurisdiction. It appears from the evidence that the victims of the extortion scheme understood that the business agent had these powers.

On at least seven occasions between 1971 and 1975, defendant's brother Edward used his powers to exact payments for himself as well as to require contractors to "hire" the defendant. The evidence showed that the defendant seldom, if ever, did any work whatsoever. Generally, he appeared at the job site only to pick up his check, which was equal in amount to that of the highest paid ironworker for the pay period. On one occasion, after his brother had made arrangements for him to be hired, John Arambasich appeared at the job site on the day work was scheduled to begin dressed in a suit and tie, introduced himself to the owner of the construction company, and asked how long the job was expected to last. The owner estimated about six to ten weeks. Arambasich replied, "Well, why don't you pay me four weeks' salary, and I won't bother you anymore. And you will not have any labor problems." The owner agreed and later made out a check for $1,187.20, less state and federal taxes and social security withholdings.

## I.

Arambasich does not contest the sufficiency of the evidence to support the jury's verdicts. Rather, relying primarily on *United States v. Barclay,* 560 F.2d 812 (7th Cir. 1977), he contends that the district court's failure to give his requested instructions on specific intent or some similarly worded alternative requires reversal.[1]

---

* The Honorable Robert D. Morgan, Chief Judge of the United States District Court for the Southern District of Illinois, is sitting by designation.

1. Arambasich tendered two different stock instructions on specific intent. The first is as follows:

    The crime charged in this case requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

LaBuy, *Jury Instructions in Federal Criminal Cases,* § 4.04 at 20. The alternative instruction is as follows:

    The crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

The statute under which Arambasich was convicted of extortion and conspiracy to extort, 18 U.S.C. § 1951(a), provides as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by . . . extortion . . . or conspires so to do, . . . shall be fined . . . or imprisoned . . ., or both.

As used in § 1951, "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). In this definition, "[t]he term 'wrongful,' . . . modifies the use of each of the enumerated means of obtaining property—actual or threatened force, violence, or fear . . . ," *United States v. Enmons,* 410 U.S. 396, 399, 93 S.Ct. 1007, 1009, 35 L.Ed.2d 379 (1973) (footnote omitted), and "limits the statute's coverage to those instances where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *Id.* at 400, 93 S.Ct. at 1009–1010. The statute reaches the wrongful use of fear of financial harm to obtain property. *See, e. g., United States v. Braasch,* 505 F.2d 139, 151 (7th Cir. 1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975); *United States v. Duhon,* 565 F.2d 345, 351 (5th Cir. 1978).

We are inclined to agree with the district judge in the case at bar that the labels "specific intent" and "general intent," [2] which are emphasized in the stock instructions he refused to give, and the distinction the instructions attempt to make between those categories of intent, are not enlightening to juries.[3] More specific and therefore more comprehensible information is conveyed by stating the precise mental state required for the particular crime.

In the case at bar that mental state consisted of an intent to obtain money from contractors with the knowledge that it was paid because they feared economic harm and that the defendant was not entitled to receive it. *United States v. Enmons, supra,* 410 U.S. at 400, 406 n. 16, 93 S.Ct. 1007. The cases are unanimous in holding that the government need not prove that the defendant acted for the purpose of affecting interstate commerce or with knowledge that it would be affected. *See, e. g., United States v. Spagnolo,* 546 F.2d 1117, 1119 n. 5 (4th Cir. 1976); *United States v. Green,* 246 F.2d 155, 159–160 (7th Cir.), *cert. denied,* 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957); *United States v. Bryson,* 418 F.Supp. 818, 826–827 (W.D.Okl.1975).

In this case, the district court correctly instructed the jury as follows:

> The element of intent in the criminal law has traditionally been viewed as a bifurcated concept embracing either the specific requirement of purpose or the more general one of knowledge or awareness.

438 U.S. at 445, 98 S.Ct. at 2877.

---

> An act or a failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

Devitt and Blackmar, *Federal Jury Practice and Instructions,* § 14.03 at 377 (1977).

**2.** See ALI, *Model Penal Code* § 2.02, Comment (Tent. Draft No. 5, 1955):

> [W]e can see no virtue in preserving the concept of "general intent," which has been an abiding source of ambiguity and of confusion in the penal law.

The Model Penal Code, the Supreme Court recently observed, has been "one source of guidance upon which the Court has relied to illuminate questions" such as the appropriate standard of intent. *United States v. United States Gypsum Co.,* 438 U.S. 422, 444, 98 S.Ct. 2864, 2877, 57 L.Ed.2d 854 (1978). Compare with the statement quoted above from the Comment to § 2.02 of the Code the following statement in the *Gypsum* opinion:

**3.** For a discussion of the various ways in which the terms "general intent" and "specific intent" are used see LaFave and Scott, *Handbook on Criminal Law* 201–202 (1972); *see generally United States v. United States Gypsum Co.,* 438 U.S. 422, 434–446, 98 S.Ct. 2864, 2872–2878, 57 L.Ed.2d 854 (1978); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). It has been said that the intent required under § 1951 is "general intent." See *United States v. Green,* 246 F.2d 155, 159–160 (7th Cir.), *cert. denied,* 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957); *United States v. Warledo,* 557 F.2d 721, 729 n. 3 (10th Cir. 1977). We do not rest our decision on this, however.

To sustain the charges of extortion contained in . . . the indictment, the Government must prove each of the following propositions beyond a reasonable doubt . . . :

First, that the company named in the count made the payments of money alleged . . . .

Second, that the reason the company made the payments was because its officers or employees feared economic harm to the company if the payments were not made.

Third, that the defendant John Arambasich received the payments from the company knowing that he was not legally entitled to receive them and knowing that they were made because the company feared economic harm.

Fourth, that interstate commerce was affected in the manner I have explained . . . .

Further, the court explained that,

The word knowingly, as used in the crime charged means that the act was done voluntarily and purposely, and not because of mistake or accident. Knowledge may be proven by a defendant's conduct and by all of the facts and circumstances surrounding the case.

The court also elaborated on the meaning of "fear" as the term was used with respect to the victim's state of mind.[4]

The indictment charges Arambasich and his brother as principals in the crimes alleged. For purposes of the federal criminal law, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal." 18 U.S.C. § 2(a). The court explained to the jury that,

In order to aid or abet the commission of a crime, a person must associate himself with the criminal venture, participate in it—knowingly participate in it—knowing what it is about, and try to make it succeed.

This instruction is also in accord with the law. *See, e. g., United States v. Bryant,* 461 F.2d 912, 919 (6th Cir. 1972); *United States v. Peoni,* 100 F.2d 401, 402–403 (2d Cir. 1938) (L. Hand, J.).

■ These instructions adequately advised the jury that Arambasich was not to be convicted for voluntarily but innocently accepting the money, without the requisite intent "to obtain that which . . . [he was] not entitled to receive," or without knowledge that the payments were the product of fear of economic harm. Taken as a whole, they adequately apprised the jury of the mental element that the government was required to prove beyond a reasonable doubt and specified the criteria by which the jury was to evaluate the evidence.

■ Although he argues that the failure to give the requested instructions constitutes reversible error, Arambasich never explains how he could have been prejudiced by the failure to give these instructions. As we pointed out in *Barclay,* there is no "particular magic or salvation in using the word 'specific' per se. The important aspect is that the total term of 'specific intent' be defined and its applicability to the case be made clear." *United States v. Barclay, supra,* 560 F.2d 817 n. 7. It is unnecessary to use the term "specific intent" or to give any particular form of instruction.

The stock "specific intent" instructions tendered by Arambasich are based on decided cases and have been approved in countless others. Yet they illustrate, if not the "variety" or "disparity," the "confusion of [judicial] definitions of the requisite but elusive mental element." *Morissette v. United States, supra,* 342 U.S. at 252, 72 S.Ct. at 244. *See also United States v. United States Gypsum Co., supra,* 438 U.S. at 444, 98 S.Ct. at 2877. It is not very

---

4. The court said:

The term fear has a commonly accepted meaning. It includes fear of economic harm. It may consist of a state of anxious concern, alarm or apprehension of anticipated harm to a business or of a threatened economic loss. Fear may be present even if the confrontations between the alleged victim and the alleged extorter appear friendly.

helpful to speak of a defendant's "purpose" to violate the law, as do these stock instructions. Use of the phrase "purposely intending to violate the law" may be erroneously interpreted by jurors, for example, to require that the defendant know his act violates a criminal statute, which is ordinarily unnecessary, *see* LaFave and Scott, *supra* note 3 at 356–357, 365. Giving one of the stock instructions may therefore not only confuse but mislead the jury to the prejudice of the prosecution. A trial judge is accordingly justified in refusing to give it, if he adequately instructs on the requisite mental state by other means.

Arambasich's heavy reliance on *United States v. Barclay, supra,* is misplaced. There the defendant was convicted of aiding and abetting the making of a false entry on bank records in violation of 18 U.S.C. §§ 2, 1005.[5] The prosecution was required to prove that Barclay "acted with the specific intent to defraud or injure the bank or aid [the principal] in doing so." *Id.* at 816. The aiding and abetting statute does not expressly require any particular "intent." But, as the government conceded in *Barclay,* "because there can be no violation of 18 U.S.C. § 2 alone, the intent required is defined by the substantive offense and is to aid and abet its commission." *Id.* at 816.

The judge instructed the jury that the government was required to prove that (1) Johnson, the alleged principal, caused a false entry to be made on the bank's records, (2) Johnson "had the intent to injure or defraud the bank," and (3) Barclay "did knowingly aid and abet . . . [Johnson] in causing the false entry to be made."

*Id.* at 815 n. 5. But the judge refused to give either the *LaBuy* instruction on specific intent, *see* note 1, *supra,* tendered by *Barclay* and the government, *United States v. Barclay, supra,* 506 F.2d at 814, or an instruction defining "intent to defraud," which incorporated *LaBuy's* § 4.07, *id.* at 815 n. 4. Nor did he otherwise advise the jury that the government had to prove that Barclay intended that the false entry injure or defraud the bank.

This court held the instructions inadequate, because

> Nowhere in the jury charge . . . [was there] any language specifying the criteria by which . . . [the intent to injure or defraud] must be measured.

*Id.* at 818. Furthermore, although the instruction defining the elements of the offense, summarized above, did

> state as an essential element that Barclay must have knowingly aided and abetted Johnson, there . . . [was] no explanation that Barclay must have acted with the required specific intent to defraud or injure the bank or aid Johnson in doing so.

*Id.* at 816.[6] Thus, the trial court's instructions in *Barclay* "failed to provide adequate criteria by which the jury could determine whether or not both Johnson and Barclay had the requisite specific intent to injure or defraud the bank." *Ibid.*

The importance of this omission was underscored by evidence of the jury's actual confusion concerning the requirement of intent. After deliberating for about eleven hours, the jury in *Barclay* sent out four

---

**5.** In relevant part, the statute provides:

> Whoever makes any false entry in any book, report or statement of such [national or insured] bank with intent to injure or defraud such bank or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the assets of such bank, or the Board of Governors of the Federal Reserve System—
> Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1005.

**6.** In *Barclay* there was a substantial possibility that the jury understood the court's instructions as requiring conviction if they found that the defendant did no more than obtain the loan. *See also United States v. Bryant, supra.* For, in instructing the jury on aiding and abetting, the court simply read the statute, 18 U.S.C. § 2, quoted *supra.* Compare the aiding and abetting instruction given in this case, quoted *supra.*

written questions, one of which was, "Please give us a definition of 'intent.'" The court's response was as follows:

> The word 'intent' refers to the purpose one has in performing an act. The instructions previously given you describe the intent required under each count of the indictment and I do not believe I can add anything to what I have already said.

*United States v. Barclay, supra,* 560 F.2d at 816. This supplemental instruction only "reinforced the basic misconception that Barclay could be found guilty of aiding and abetting a § 1005 violation by merely knowingly securing a loan from Johnson without also knowing that Johnson was going to make a false entry with the specific intent to injure or defraud the bank and without Barclay himself having the specific intent to injure or defraud the bank, commit a crime, or aid Johnson in committing a crime." *Id.* at 816–817. Since the jury had not been "properly advised regarding the intent which Barclay must have entertained in order to violate 18 U.S.C. §§ 2 and 1005," we held that under *United States v. Bryant, supra,* 461 F.2d at 919–920, reversal of the conviction was required.

As we have pointed out, the instructions here required the jury to find that Arambasich knew of the extortion scheme and "voluntarily and purposefully" participated in it and tried to make it succeed. Arambasich was not convicted of being a "knowing spectator" or an unwitting assistant; rather, he was convicted for being a knowing participant.[7] In light of the instructions given, the failure to give the "specific intent" instruction was not reversible error.

## II.

Arambasich's second contention, namely, that it was reversible error for the court not to give a "two-conclusion instruction," defining reasonable doubt, is wholly without merit. *United States v. Larson,* 581 F.2d 664, 669 (7th Cir. 1978); *United States v. Cooper,* 577 F.2d 1079, 1085 (6th

Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978).

The judgment is affirmed.

AFFIRMED.

---

7. The court's instructions concerning the conspiracy count are not challenged; in any event they were adequate.