**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Javier VALENCIA and Ivan Dario
Martinez–Valencia,
Defendants–Appellants.**

**Nos. 89–1235, 89–1236.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1989.

Decided July 16, 1990.

---

Sheila Finnegan and Thomas M. Durkin, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Alan I. Karten, Miami, Fla. and Paul Morris, Coral Gables, Fla., for defendant-appellant.

Before RIPPLE, MANION and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Defendants Ivan Dario Martinez–Valencia (Martinez) and Jose Javier Valencia (Valencia) appeal their convictions for attempted possession with intent to distribute 100 kilograms of cocaine in violation of 21 U.S.C. § 846. For the following reasons, we affirm.

## I

## BACKGROUND

### A. *Procedural Posture*

Mr. Martinez and Mr. Valencia were charged in a one count indictment with knowingly attempting to possess with intent to distribute roughly 100 kilograms of cocaine in violation of 21 U.S.C. § 846. The defendants were tried jointly before a jury on August 29, 1988, and both were found guilty. On January 27, 1989, the district judge sentenced Mr. Valencia to 235 months imprisonment, followed by 3 years supervised release, and fined Mr. Valencia $407,550. Mr. Martinez was sentenced to 188 months imprisonment, followed by 3 years supervised release.

### B. *Facts*

The underlying facts were disputed at trial. The jury verdict, however, indicates that the jury largely discredited the defendants' testimony and instead credited the testimony of undercover agent Art Martinez of the Cook County Sheriff's Department. Thus, our discussion of the facts is drawn primarily from agent Martinez' testimony. We shall, however, for the sake of completeness, follow this recitation of the facts with a discussion of the defendants' version of the facts.

### 1. The government's version of the facts

The case involves a negotiated drug transaction between undercover agent Martinez[1] and Mr. Valencia. On May 11, 1988, "Rodrigo," a confidential police informant, introduced the undercover agent to Mr. Valencia. Mr. Valencia told the agent that he wanted to purchase 150 kilograms of cocaine and was willing to pay a total of 1.95 million dollars for the cocaine. Tr. at 5–6. After the agent agreed to this price, Mr. Valencia proposed to pay for the cocaine in $1,400,000 cash plus two kilograms of white heroin that he recently had imported from Asia. When the agent tentatively agreed to this arrangement, Mr. Valencia explained that he could obtain only $400,000 on such short notice. The agent replied that he would consider giving Mr. Valencia 100 kilograms when the $400,000 was paid, but that he would not have the remainder delivered until he saw the rest of the cash. Mr. Valencia then suggested that they drive to his residence so that he could show the agent the cash. All three men, Mr. Valencia, the agent, and the informant Rodrigo then drove to Mr. Valencia's residence in Mr. Valencia's truck. *Id.* at 6–8.

When they arrived at Mr. Valencia's residence in Wheeling, Illinois, Mr. Valencia introduced the men to defendant Martinez. As Mr. Martinez stood approximately five feet away from the other three men, Mr. Valencia explained to the agent that Mr. Martinez was an engineer and that Mr. Valencia had brought Mr. Martinez to the United States from Columbia to build a sophisticated storage area for cocaine. *Id.* at 12–13. The four men walked into the garage, and Mr. Valencia pointed out a twenty-four inch by twenty-four inch hole cut out of the concrete garage floor. Mr. Martinez entered the hole and began working as Mr. Valencia explained that this storage area would be able to store as much as 1200 kilograms of cocaine. *Id.* at 16–19.

---

**1.** To avoid confusion between undercover agent Martinez and defendant Martinez, hereinafter we shall refer to undercover agent Martinez as simply "the agent" or "the undercover agent."

Mr. Valencia described the storage area in some detail. He explained that a scissor jack underneath the floor would raise and lower a plug by remote control so that no one would be able to detect the hole in the floor. He also stated that he had built three other such storage areas in other residences in the Wheeling area and that each had cost him $40,000. During this discussion, Mr. Martinez was approximately seven or eight feet away, working inside the hole. *Id.* at 16–19.

Mr. Valencia, Rodrigo, and the undercover agent then left the garage and went into one of the bedrooms of the house. Mr. Valencia took a briefcase out of the closet and showed the agent several bundles of U.S. currency. Mr. Valencia also opened a headboard over the bed and pulled out a bag of cocaine and several more bundles of cash. Mr. Valencia claimed that the cash totalled approximately $200,000, and that he would have the remainder of the cash the next morning. *Id.* at 21.

As the three men walked back to Mr. Valencia's pickup truck to leave, Mr. Valencia removed the tailgate of the truck and showed the undercover agent a false compartment in the floor of the truck. Mr. Valencia said that the compartment would hold approximately 100 kilograms of cocaine. Mr. Valencia said he used the truck to transport cocaine from one area to another. *Id.* at 26. The parties agreed to meet the next day to continue the negotiation of their transaction.

On May 12, the day following the initial meeting at Mr. Valencia's house, Mr. Valencia again met with the agent and Rodrigo at a McDonald's restaurant in Wheeling. There Mr. Valencia explained that he was able to gather only $300,000 in cash, but said that he would be able to obtain the remaining cash by approximately 1:00 p.m. that afternoon. The men then agreed to meet that afternoon at the Palwaukee Airport in Wheeling. *Id.* at 29–30.

At 2:00 p.m. that day, Mr. Valencia and Mr. Martinez drove to the airport in Mr. Valencia's pickup truck to meet the agent

and Rodrigo. Mr. Valencia exited the truck, and Mr. Martinez slid over into the driver's seat and drove away. Mr. Valencia, Rodrigo, and the agent drove back to Mr. Valencia's house in the agent's vehicle. A short time later, Mr. Martinez drove up in the pickup truck, beeped the horn, and Mr. Valencia went outside. Mr. Valencia returned to the house with Mr. Martinez, who was carrying a blue flight bag. After Mr. Martinez placed the bag on the table, Mr. Valencia opened it and emptied several bundles of U.S. currency. Mr. Valencia then pulled out a money-counting machine. Mr. Valencia, the agent, and Rodrigo began counting the money, while Mr. Martinez walked about the dining room and looked out the dining room window. Mr. Valencia eventually asked Mr. Martinez to help count the cash, and Mr. Martinez assisted them by removing the rubber bands on the bundles and handing them to the agent to count. The agent asked Mr. Valencia if this money totalled $400,000. Mr. Valencia said it was $200,000, and that the other $200,000 was in the bedroom. After the men had finished counting the approximately $150,000 on the table, the agent activated an electronic arrest signal and both Mr. Valencia and Mr. Martinez were arrested. Tr. at 31–34.

Agents searched the house and seized the following items: $407,500 in cash; a scale; a "scrambler" (a device that precludes the effective taping of phone calls); and Mr. Martinez' diary, which was found to contain electrical diagrams for a garage and some type of detailed mechanical instructions.[2]

The government also produced evidence at trial that Mr. Martinez had ordered eight hydraulic jacks for Mr. Valencia and had traveled throughout the country in order to acquire this equipment, even though Mr. Martinez denied knowing the intended use of the equipment.[3]

### 2. Mr. Valencia's version of the facts

Mr. Valencia testified at trial that Mr. Martinez was a friend who was visiting at

---

**2.** Tr. at 37–39, 166, 170–71, 214, 231, 372–77.

**3.** Tr. at 115–18, 131–34, 328–30, 345, 347.

his home in Wheeling. Tr. at 277. Mr. Valencia also claimed that the house in Wheeling had been occupied by his cousin before he moved in, and that the hole in the garage floor and the hydraulic jack already were there when he moved in. Tr. at 254, 257, 293. Regarding the negotiations with the agent, Mr. Valencia claimed that the discussions were related to an entirely different subject. Mr. Valencia testified that the entire series of negotiations involved an effort to obtain the release of his friend, Diego Munoz, who allegedly was being held hostage in Columbia. He claimed that the money recovered from his residence had been given to him by a person named "Pecos," who was supplying the money for the release of Munoz. Mr. Valencia claimed that he was instructed to meet Rodrigo at the Hinsville Holiday Inn, and that the entirety of his further discussions and negotiations with Rodrigo and the agent related to negotiating the release of Munoz from captivity. Tr. at 259–76.

3. Mr. Martinez' version of the facts

Mr. Martinez testified that he had met Mr. Valencia in Miami at Mr. Valencia's clothing store; some time later, Mr. Valencia had called him from Chicago to request that he buy some mechanical parts and told him that a man named Ramero Gonzales would give him the specifications. Tr. at 321–28. Gonzales instructed Mr. Martinez to purchase some hydraulic lifts and to send the equipment to Oscar Alzante in Chicago. *Id.* at 328. When difficulties concerning the delivery of the equipment arose, Mr. Martinez traveled in an effort to locate the equipment. *Id.* at 329–30.

In his appellate brief, Mr. Martinez admits being present "about five feet away" when Mr. Valencia told the agent that Mr. Martinez was building a cocaine storage area. Martinez' Br. at 8. At trial, Mr. Martinez testified that he did not touch or count the money that was delivered to Mr. Valencia's house, Tr. at 339, but in his brief he admits that he "removed rubber bands from the bundles, and handed the bundles to the agent who counted them." Martinez' Br. at 9. Mr. Martinez claims that he did not suspect any criminal activity, and

thought that the money was proceeds from the sale of inventory from Mr. Valencia's clothing store. Tr. at 340.

## II

### Mr. Martinez' Appeal

For the sake of clarity in presentation, we shall deal with Mr. Martinez' appeal first.

### A. *Sufficiency of the Evidence*

Mr. Martinez first contends that the evidence at trial was insufficient to support his conviction for attempted possession with intent to distribute cocaine. In asserting a sufficiency of the evidence challenge, Mr. Martinez bears a heavy burden. In reviewing such a challenge, we view all of the evidence and the inferences reasonably drawn from that evidence in the light most favorable to the government and will uphold the jury's verdict if " ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " *United States v. Duncan*, 896 F.2d 271, 277 (7th Cir.1990) (quoting *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir.1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied*, 474 U.S. 1085, 106 S.Ct. 860, 88 L.Ed.2d 899 (1986)) (emphasis supplied by *Jackson* Court).

Mr. Martinez does not seriously contest that there was sufficient evidence to find him guilty of attempted *possession* of cocaine. *See* Martinez' Br. at 15–17. Instead, he argues that there was not sufficient evidence to convict him of attempted possession *with intent to distribute*. He thus seeks to bifurcate the analysis of *possession* and *distribution* and to argue that, because his aid and assistance to Mr. Valencia related only to the "storage" of the cocaine, no reasonable jury could conclude beyond a reasonable doubt that he possessed the necessary intent to aid the *distribution* of cocaine. *See id.* at 17.

██ In evaluating this contention, we note Mr. Martinez' assertion that his "con-

viction rests upon the theory that he aided and abetted Mr. Valencia's attempted possession with intent to distribute." Martinez' Br. at 11. For sake of argument, we shall assume that Mr. Martinez was convicted of aiding and abetting Mr. Valencia's attempt; such a conviction is entirely permissible.[4] One convicted as an aider and abettor may be punished as a principal. 18 U.S.C. § 2(a); *United States v. Pino–Perez,* 870 F.2d 1230, 1233 (7th Cir.) (en banc), *cert. denied,* — U.S. ——, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989).[5]

In defining the elements of aiding and abetting liability, this court has adopted Judge Learned Hand's well-known formulation in *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938). In order for Mr. Martinez to be convicted for aiding and abetting Mr. Valencia's attempted possession with intent to distribute cocaine, all the evidence need show is that Mr. Martinez " 'in some sort associate[d] himself with the venture, that he participate[d] in it as in something he wishe[d] to bring about, [and] that he s[ought] by his action to make it succeed.' " *Pino–Perez,* 870 F.2d at 1235 (quoting *Peoni,* 100 F.2d at 402). As this court stated in *United States v. Beck,* 615 F.2d 441, 448 (7th Cir.1980), the aiding and abetting standard has two prongs—association and participation. To prove association, the state must prove that the defendant had the state of mind required for the statutory offense; to prove participation, "[a] high level of activity need not be shown.... Instead, 'there must be evi-

dence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that [the] defendant committed an overt act designed to aid in the success of the venture.' " *Id.* at 449 (citations omitted) (quoting *United States v. Longoria,* 569 F.2d 422, 425 (5th Cir. 1978)); *see also, United States v. McNeese,* 901 F.2d 585, 608 (7th Cir.1990); *United States v. Moya–Gomez,* 860 F.2d 706, 756 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989).

The evidence, viewed most favorably toward the government, certainly could lead a rational trier of fact to conclude that Mr. Martinez knowingly and intentionally associated himself with Mr. Valencia's attempted possession and intended distribution of cocaine and that Mr. Martinez participated in that venture by performing acts with an intent to facilitate the success of the venture. Mr. Martinez was building a twenty-four by twenty-four inch storage compartment for cocaine. Although he testified that he was ignorant concerning the use of this storage compartment, the other evidence adduced at trial simply belies this assertion. Mr. Martinez was present when Mr. Valencia explained to the undercover agent that this storage compartment would be used to store up to 1200 kilograms of cocaine. His diary contained electrical diagrams for a garage and instructions for the construction of hydraulic lift tables of the type found in Mr. Valencia's garage. He also had ordered hydraulic jacks for use in these storage

---

**4.** *See* 21 U.S.C. § 846; 18 U.S.C. § 2(a); *United States v. Pino–Perez,* 870 F.2d 1230, 1233 (7th Cir.) (en banc), *cert. denied,* — U.S. ——, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989); *United States v. Sims,* 895 F.2d 326, 327 (7th Cir.1990) (conviction affirmed for aiding and abetting an attempt to commit wire fraud); *United States v. Gabriel,* 810 F.2d 627, 636 (7th Cir.1987) (conviction affirmed for aiding and abetting the solicitation of a crime); *United States v. Sweiss,* 800 F.2d 684, 685 (7th Cir.1986) (conviction affirmed for aiding and abetting an attempted arson), *opinion vacated on other grounds and conviction reaffirmed,* 814 F.2d 1208 (7th Cir. 1987); *see also United States v. Wagner,* 884 F.2d 1090, 1097 (8th Cir.1989) (evidence sufficient to convict defendant of aiding and abetting brother's attempted manufacture of meth-

amphetamine), *cert. denied,* — U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).

**5.** *See also United States v. Kasvin,* 757 F.2d 887, 890 (7th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985). Aiding and abetting need not be specifically alleged in the indictment, and a defendant indicted for a substantive offense can be convicted as an aider and abettor upon a proper demonstration of proof so long as no unfair surprise results. Although aiding and abetting apparently was not charged in the indictment against Mr. Martinez, he concedes that, assuming sufficient evidence, he can be convicted as an aider and abettor. *See* Martinez' Br. at 14. He also seems to concede that he was not unfairly surprised by the government's theory of aiding and abetting liability. *See id.* at 11.

compartments and had flown across the country in order to track down some of the equipment that was lost.

 Knowledge and intent in narcotics cases often must be proved largely by circumstantial evidence. *United States v. Moser,* 509 F.2d 1089, 1092 (7th Cir.1975). The intent to distribute drugs has been inferred from the possession of a quantity of drugs larger than needed for personal use, *United States v. Douglas,* 874 F.2d 1145, 1154 (7th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989), or from possession of drug-packaging paraphernalia. *United States v. Staten,* 581 F.2d 878, 886 (D.C.Cir.1978); *see also United States v. Garrett,* 903 F.2d 1105, 1113, (7th Cir.1990). A defendant also need not obtain actual or constructive possession of drugs in order to be convicted of aiding and abetting the possession of drugs with intent to distribute. *McNeese,* 901 F.2d at 609; *United States v. Wesson,* 889 F.2d 134, 135 (7th Cir.1989).[6] Certainly, the fact that Mr. Martinez was participating in the construction of a highly sophisticated, twenty-four by twenty-four inch drug storage compartment permits the inference that he shared Mr. Valencia's intent to

distribute drugs and was aiding and abetting Mr. Valencia's attempted possession of those drugs for distribution.[7]

Moreover, the evidence of Mr. Martinez' construction of the elaborate storage area was not the only evidence in support of his guilt. The evidence, viewed in the light most favorable to the government, also implicated Mr. Martinez in the procurement of cash to put together the cocaine deal. The trial testimony of both Mr. Valencia and the undercover agent established that on the day of the arrest, defendant Martinez drove Mr. Valencia's truck from the Palwaukee Airport and then returned to Mr. Valencia's house carrying a flight bag filled with cash. Mr. Martinez also assisted to some extent in counting the money for the transaction. *See* Martinez' Br. at 9. In light of all this evidence, we conclude that a rational trier of fact could have found Mr. Martinez guilty of aiding and abetting Mr. Valencia's attempted possession of cocaine with intent to distribute. Such a finding of guilt renders Mr. Martinez punishable as a principal. *Pino–Perez,* 870 F.2d at 1233. Thus, we cannot accept Mr. Martinez' sufficiency of the evidence argument.[8]

---

**6.** Of course, in this case, since the charge is *attempted* possession with intent to distribute, the *principal* also need not have either actual or constructive possession of drugs in order for Mr. Martinez to be convicted of aiding and abetting.

**7.** *See United States v. Moser,* 509 F.2d 1089, 1091, 1093 (7th Cir.1975) (evidence sufficient to support jury's finding that defendant was a party to drug transaction, either as a direct participant or as an aider and abettor, based on his presence during negotiation and sale, his comments to prospective buyer regarding the quality of the drugs, and his active participation in a later transaction involving the same parties); *United States v. Wagner,* 884 F.2d 1090, 1097 (8th Cir.1989) (evidence sufficient to support defendant's conviction for aiding and abetting his brother's attempt to manufacture methamphetamine where defendant signed and paid for a C.O.D. package containing a glass adaptor necessary to manufacture methamphetamine, stored drums of chemicals in his garage, and supervised the loading of chemicals and equipment into a truck), *cert. denied,* — U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).

**8.** While our discussion has assumed that Mr. Martinez was convicted of aiding and abetting

Mr. Valencia's attempted possession of cocaine with intent to distribute, we also believe that the evidence in the case supports Mr. Martinez' conviction for attempted possession of cocaine with intent to distribute. *See infra* p. 685; *cf. United States v. Gabriel,* 810 F.2d 627, 636–37 (7th Cir. 1987) (sufficient evidence of intent to sustain conviction for attempted arson where the defendant had shown the prospective arsonist a layout of the defendant's store, had discussed the arsonist's payment, had agreed on the date the arson would be committed, and had discussed logistics); *United States v. August,* 835 F.2d 76, 77–79 (5th Cir.1987) (sufficient evidence to sustain conviction for attempted possession of cocaine with intent to distribute where defendant telephoned supplier, negotiated purchase over the phone, arranged rendezvous, flew over three hundred miles to meet supplier, and was carrying the agreed upon purchase price of $7000 cash in his luggage); *United States v. Mandujano,* 499 F.2d 370, 378–79 (5th Cir.1974) (transfer of money in contemplation of heroin sale constituted sufficient evidence to support conviction of attempted distribution of heroin), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).

B. *The Conscious Avoidance Instruction*

Mr. Martinez next contends that the district court erred in giving an "ostrich" or "conscious avoidance" instruction. The instruction at issue stated as follows:

> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word.

Tr. at 538. Mr. Martinez contends that the giving of the instruction was impermissible in his case because there was no evidence that he consciously avoided the truth. He claims that the only reasonable finding the jury could have made was either that he knew nothing or that he had actual knowledge. Under such circumstances, Mr. Martinez claims, the ostrich instruction could only confuse the jury and enhance the chances of wrongful conviction by allowing the jury to find guilty knowledge when in fact none existed. We have approved an identical formulation of this instruction under appropriate circumstances in a number of cases.[9] However, we agree with Mr. Martinez' contention that an ostrich instruction is not appropriate unless the issue of conscious avoidance is raised by the evidence. As we have stated, " 'this instruction, like all instructions should be given only when it addresses an issue reasonably raised by the evidence.' " *United States v. Talkington*, 875 F.2d 591, 595–96 (7th Cir.1989) (quoting *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989)). We also have noted that " '[a] conscious avoidance instruction is "properly given only when the defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance." ' " *Talkington*, 875 F.2d at 596 (quoting *United States v. White*, 794 F.2d 367, 371 (8th Cir.1986) (quoting *United States v. McAllister*, 747 F.2d 1273, 1275 (9th Cir.1984), *cert. denied*, 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1985))).

We conclude that the district court did not err in giving the ostrich instruction in Mr. Martinez' case because, in light of all the evidence, Mr. Martinez' own testimony and theory of defense strongly support an inference of deliberate ignorance. Although the evidence showed that Mr. Martinez had ordered eight hydraulic lift tables for Mr. Valencia, had traveled across the country to procure this equipment, and had done mechanical work on the hydraulic lift in the hole in Mr. Valencia's garage, Mr. Martinez claimed at trial that he did not know the intended use of the hydraulic lifts and that he had never bothered to ask Mr. Valencia. Tr. at 361–63. Moreover, Mr. Martinez denied knowledge of the scheme despite the evidence that he was present only a few feet away from Mr. Valencia and the undercover agent when Mr. Valencia told the agent that Mr. Martinez was building a sophisticated storage area for cocaine. *Id.* at 12–13, 17–20, 362–63. Finally, although the evidence at trial showed that Mr. Martinez had dropped Mr. Valencia off at the airport to meet with the undercover agent, had later returned in the pickup to Mr. Valencia's house with a flight bag containing $150,000 in cash, and had

---

**9.** *See United States v. Paiz*, 905 F.2d 1014, 1022–23 (7th Cir.1990); *United States v. Defazio*, 899 F.2d 626, 635–36 (7th Cir.1990); *United States v. Herrero*, 893 F.2d 1512, 1537–38 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990); *United States v. Talkington*, 875 F.2d 591, 595–96 (7th Cir.1989); *United States v. Diaz*, 864 F.2d 544, 549–51 (7th Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989); *United States v. Ramsey*, 785 F.2d 184, 189–91 (7th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986). We disagree with Martinez' suggestion that the "complex and attenuated" nature of the theory under which he was prosecuted (aiding and abetting an attempt) rendered the ostrich instruction inappropriate. *See Talkington*, 875 F.2d at 595–96 (concluding that the district court did not err in giving a conscious avoidance instruction in conjunction with an aiding and abetting instruction); *United States v. Holland*, 831 F.2d 717, 722 (7th Cir.1987) (commending this precise formulation of the ostrich instruction to the district court in a case where the defendants were charged with aiding and abetting the misapplication of federally insured funds).

assisted Mr. Valencia and the undercover agent in counting the money, *id.* 31–34, Mr. Martinez testified at trial that he assumed the money came from the sale of inventory from Mr. Valencia's clothing store. *Id.* 339–40. In light of the evidence against him, Mr. Martinez' testimony in his own defense certainly supports an inference of deliberate indifference to the truth.[10] We therefore conclude that the use of the conscious avoidance instruction in his case was not erroneous.

C. *The Aiding and Abetting Instruction*

The district court gave the following aiding and abetting instruction:

> Any person who knowingly aids, abets, counsels, commands, induces or procures the commission of a crime is guilty of that crime. However, that person must knowingly associate himself with a criminal venture, participate in it and try to make it succeed.

Tr. at 538. This instruction is the Seventh Circuit's pattern instruction on aiding and abetting. Federal Criminal Jury Instructions of the Seventh Circuit § 5.08, at 72 (1980); *see United States v. McNeese,* 901 F.2d 585, 607 (7th Cir.1990). Mr. Martinez argues that this instruction was deficient because it failed to address the issue of specific intent. Because Mr. Martinez did not raise this objection at trial, we must review the instruction only for "plain error." *McNeese,* 901 F.2d at 608. In order to show plain error, the alleged error must result in a " 'miscarriage of justice' " of such magnitude that the defendant probably would have been acquitted absent the error. *United States v. Smith,* 869 F.2d 348, 356 (7th Cir.1989) (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)).

 The state of mind required for conviction as an aider and abettor is the same state of mind as required for the principal offense. *United States v. Moya–Gomez,* 860 F.2d 706, 756 (7th Cir.1988),

cert. denied, —— U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Holland,* 831 F.2d 717, 719 (7th Cir.1987); *United States v. Beck,* 615 F.2d 441, 450–51 (7th Cir.1980). Thus, because the principal offense in this case was an "attempt to knowingly or intentionally possess cocaine with the intent to distribute it," 21 U.S.C. §§ 841(a)(1), 846, Mr. Martinez, in order to be found guilty of aiding and abetting the offense, must have either *knowingly* or *intentionally* aided or abetted the attempted possession of cocaine with the *intent* that the cocaine be distributed. To prove a defendant guilty of aiding and abetting, the prosecution must show that the defendant " 'in some sort associate[d] himself with the venture, that he participate[d] in it as in something he wishe[d] to bring about, [and] that he s[ought] by his action to make it succeed.' " *Beck,* 615 F.2d at 448 (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938)); *see also McNeese,* 901 F.2d at 608; *United States v. Pino–Perez,* 870 F.2d 1230, 1235 (7th Cir.) (en banc), *cert. denied,* —— U.S. ——, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989). As noted earlier, the prosecution must prove two elements in order to convict a defendant of aiding and abetting: " '(1) association, i.e., that the defendant shared the criminal intent of the principal; and (2) participation, i.e., some overt act designed to aid in the venture's success.' " *Moya–Gomez,* 860 F.2d at 756 (quoting *United States v. Pope,* 739 F.2d 289, 291 (7th Cir.1984)).

 We conclude that the aiding and abetting instruction in this case adequately addressed the mental component of the offense. Initially, we note that the Seventh Circuit pattern instruction used in this case is a paraphrased combination of the language of 18 U.S.C. § 2(a) and Judge Hand's formulation of aiding and abetting in *Peoni:*

> Any person who *knowingly* aids, abets, counsels, commands, induces or procures

---

**10.** *See United States v. Kehm,* 799 F.2d 354, 362 (7th Cir.1986) (upholding ostrich instruction in case involving a conspiracy to distribute drugs in which defendant claimed ignorance of drug smuggling operation, although the evidence

showed that he had set up a corporation for friends, rented an airplane, stated at a meeting that he did not want to hear about the use of the airplane, and had known that the company's directors used pseudonyms).

the commission of a crime is guilty of that crime. However, that person must *knowingly* associate himself with the criminal venture, *participate* in it *and try* to make it succeed.

Tr. at 538 (emphasis supplied). The use of the terms "knowingly" and "try" indicate that, at least, a "knowing" association with a criminal venture and "participat[ion]" in that venture with an intent (as evidenced by the term "try") to make it succeed are required to establish guilt under this formulation of aiding and abetting. This court previously has rejected an argument that a similarly worded aiding and abetting instruction failed to convey a specific intent requirement. *See United States v. Irali*, 503 F.2d 1295, 1302–03 (7th Cir.1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975). Moreover, viewing the instructions as a whole, as we are required to do, *McNeese*, 901 F.2d at 608, we are convinced that the required mental state for Mr. Martinez' offense was set forth adequately for the jury.[11] The instruction that defined the elements of the offense, which was given before the aiding and abetting instruction, read as follows:

To sustain the charge of attempting to possess cocaine with intent to distribute, the government must prove the following propositions:

First, the defendant attempted to knowingly or intentionally possess cocaine with the intent to distribute it; and

Second, the defendant knew the substance was a controlled substance.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

Tr. at 537–38; *see* Federal Criminal Jury Instructions of the Seventh Circuit § 6.01 (1980); III Federal Criminal Jury Instructions of the Seventh Circuit 117 (1986). Under these circumstances, the omission of language regarding specific intent from the aiding and abetting instruction certainly was not plain error.[12]

**11.** This court recently has stated that "[i]n assessing claims of error in jury instructions, substantial discretion is given to the trial court with respect to the specific wording of the instructions.... '[T]he [trial] court need not give a proposed instruction if the essential points are covered by those that are given.' " *United States v. Penson*, 896 F.2d 1087, 1090 (7th Cir.1990) (quoting *United States v. Xheka*, 704 F.2d 974, 987 (7th Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983)) (citations omitted). As long as the instructions as a whole " 'treat the issues fairly and adequately, they will not be interfered with on appeal.' " *United States v. Machi*, 811 F.2d 991, 995 (7th Cir.1987) (quoting *United States v. Patrick*, 542 F.2d 381, 389 (7th Cir.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)); *see also McNeese*, 901 F.2d at 608–09.

**12.** We find unpersuasive Martinez' citation to *United States v. Bryant*, 461 F.2d 912, 920–22 (6th Cir.1972), and *United States v. Barclay*, 560 F.2d 812 (7th Cir.1977), as contrary authority. The aiding and abetting instruction in *Bryant*, unlike the instruction in this case, conveyed no sense of the *Peoni* standard for aiding and abetting liability. *See* 461 F.2d at 920. Moreover, there was no indication in *Bryant* that the jury was given a general elements charge that included the precise mental state required for the

offense. Finally, the *Bryant* court expressed concern that, under the charge in that case, the defendant could have been convicted based merely on his presence at the crime scene and his knowledge of the crime. *Id.* at 921. In Martinez' case, however, the jury specifically was instructed that "[p]resence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish the defendants' guilt." Tr. at 537.

We also believe that Martinez' reliance on *Barclay* is misplaced. In *Barclay*, although the jury charge stated that the principal had to have the intent to injure or defraud in order to be found guilty, the charge stated that the alleged *aider and abettor* had only to "knowingly aid and abet" the principal in order to be found guilty. *See* 560 F.2d 815 n. 5. The *Barclay* court concluded that the failure to give a specific intent instruction constituted reversible error because in its absence the jury was not properly advised of the mental state necessary to convict the defendant of aiding and abetting the principal's crime. *Id.* at 818. Martinez' case is distinguishable, however, because the jury here was instructed that, as to each defendant, the government must prove beyond a reasonable doubt that the defendant "attempted to *knowingly* or *intentionally* possess cocaine with the *intent* to distribute it." Tr. at 537 (emphasis

## D. The Attempt Instruction

### 1. The failure to mention specific intent

Mr. Martinez raises several challenges to the attempt instruction in the case. That instruction read as follows: "To attempt an offense means wilfully to do some act in an effort to bring about or accomplish something the law forbids." Tr. at 538. Mr. Martinez first contends that the attempt instruction, like the aiding and abetting instruction, was deficient because it did not mention specific intent. Again, because Mr. Martinez did not make this objection at trial, we must review the instruction only for plain error. *McNeese*, 901 F.2d at 608.

This argument is similar to Mr. Martinez' argument regarding the omission of specific intent in the aiding and abetting instruction, and for similar reasons we decline to accept it. The instructions as a whole informed the jury of the mental state the prosecution was required to prove beyond a reasonable doubt in order to secure a conviction. Moreover, the attempt instruction at issue, which was identical to the Seventh Circuit's pattern instruction on attempt, conveyed the notion of intent by use of the term "willfully." Nevertheless, Mr. Martinez argues that the district court erred by

failing to define "willfully" at some point within the jury instructions. The term "willfully" does not appear in either 21 U.S.C. § 846, the statute under which Mr. Martinez was convicted, or 21 U.S.C. § 841(a)(1), the statutory section implicitly referenced by 21 U.S.C. § 846 in this case.[13] Mr. Martinez contends, however, that, because "willfully" in this case incorporates the notion of "specific intent" rather than the "ordinary, everyday meaning" of the term, the district court erred in not defining "willfully." In support of this proposition, Mr. Martinez cites *United States v. Sherwood*, 770 F.2d 650, 653–54 (7th Cir.1985), in which the court concluded that it was not plain error to omit a definition of "willful" in jury instructions regarding the statutory offense of bail jumping, 18 U.S.C. § 3150. Although the bail jumping statute did include the term "willful," this court in *Sherwood* concluded that, because the term "willful" in the bail jumping statute had been interpreted to have its "ordinary, everyday meaning rather than a legalistic meaning that incorporates the notion of specific intent," there was little danger that the jury would be confused by failure to define the term. *Id.* at 654. In

supplied). *See United States v. Brown*, 739 F.2d 1136, 1143 (7th Cir.) (rejecting defendant's misplaced reliance on *Barclay* and stating that a failure to give a separate instruction on specific intent is not reversible error so long as the court's other instructions sufficiently define the required mental state), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984); *United States v. Arambasich*, 597 F.2d 609, 611–14 (7th Cir.1979) (similarly rejecting defendant's misplaced reliance on *Barclay* and criticizing the use of stock "specific intent" and "general intent" instructions as potentially misleading to jurors); Federal Criminal Jury Instructions of the Seventh Circuit § 6.02, at 81 (1980) (suggesting that stock instructions on "general" and "specific intent" should be avoided "in favor of instructions that precisely define the requisite mental state of the particular crime charged"); *accord Liparota v. United States*, 471 U.S. 419, 433 n. 16, 105 S.Ct. 2084, 2092 n. 16, 85 L.Ed.2d 434 (1985) (citing the *Arambasich* court's criticism of the specific intent instruction and noting that "[a] more useful instruction [than the stock specific intent instruction offered by the defendant] might relate specifically to the mental state required under [the statute] and eschew use of difficult legal concepts like 'specific intent' and 'general intent' ").

13. The Committee on Federal Criminal Jury Instructions for the Seventh Circuit expressly "recommends that an instruction defining the word 'willfully' not be given unless the word is in the statute defining the offense being tried." Federal Criminal Jury Instructions of the Seventh Circuit § 6.03 (1980). Moreover, Instruction § 6.03 states that the frequent practice of including the term "willfully" in the indictment, even when not required by the statute, "should be discouraged." *Id.; see United States v. LaBudda*, 882 F.2d 244, 249 (7th Cir.1989) (language contained in an indictment that goes beyond alleging the elements of the offense need not be proven at trial or embodied in instructions to the jury). It should be noted that Instruction § 6.03 does not give a single definition of "willfully," but indicates that if "willfully" needs to be defined as part of the offense, its meaning varies with the type of underlying offense charged. *See* Instruction § 6.03 (citing numerous examples); *see also Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943) ("willful, as we have said, is a word of many meanings, its construction often being influenced by its context"); *United States v. Ellis*, 739 F.2d 1250, 1252–53 (7th Cir.1984).

explaining the difference between "ordinary, everyday meaning" and "legalistic meaning," the court explained that, under the bail jumping statute, the term "willful" means only that the " 'person charged ... knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.' " *Id.* (quoting *United States v. Hall,* 346 F.2d 875, 880 (2d Cir.) (quoting *American Surety Co. v. Sullivan,* 7 F.2d 605, 606 (2d Cir.1925)), *cert. denied,* 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965)).

The *Sherwood* court also noted that any danger of a miscarriage of justice resulting from a failure to define "willful" was further mitigated by the strong evidence in support of the finding that Sherwood did act willfully in jumping bail. Such strong evidence, combined with the plain and ordinary meaning assigned to the term "willful" within the bail jumping statute, led the *Sherwood* court to conclude that the failure to define the term "willful" was not plain error.

■ We believe that *Sherwood* supports our conclusion that the failure to define "willful" in Mr. Martinez' case did not constitute plain error. First, as we have noted, the term "willful" does not appear in the statute that defines Mr. Martinez' charged offense. Thus, in general, the term need not be defined in the jury instructions. *See* Federal Criminal Jury Instructions of the Seventh Circuit § 6.03 (1980); *Sherwood,* 770 F.2d at 653–54; *United States v. Streich,* 759 F.2d 579, 584–85 (7th Cir.) (even though district court instructed the jury that "willfulness" was one of the elements of assault upon a federal officer with a dangerous weapon, 18 U.S.C. § 111, the trial judge committed no error in refusing to define "willfulness" because the term was not an element of the statutory offense), *cert. denied,* 474 U.S. 860, 106 S.Ct. 172, 88 L.Ed.2d 142 (1985). Second, as we have stated earlier, the elements instructions given at the beginning of the jury charge, *supra* p. 681, adequately stated the mental state that the prosecution had to prove in order to secure a conviction. Third, we conclude that the

evidence that Mr. Martinez did act willfully was so strong that any failure to define the term had no prejudicial effect on him. *See Sherwood,* 770 F.2d at 654; *United States v. Kehm,* 799 F.2d 354, 363 (7th Cir.1986) (where the defendant claimed, despite substantial evidence to the contrary, that he did not know of or participate in a conspiracy to import drugs, the court held that the district court's omission of a detailed definition of "willfully" was not plain error because "nothing turned on the fine points of willfulness"). Here, the evidence of Mr. Martinez' "willful" participation was plentiful: he had ordered numerous hydraulic jacks for use in constructing Mr. Valencia's elaborate storage compartments for cocaine; he had flown across the country in pursuit of these mechanical parts; he had participated in constructing one of these compartments; and he had transported substantial sums of money and assisted Mr. Valencia in the transaction through which an attempt was made to purchase a large quantity of drugs. This strong evidence of Mr. Martinez' "willful" participation, combined with the other factors, leads us to conclude that the district court's failure to define the term "willful" was not plain error.

### 2. Failure to mention the "substantial step" requirement

Mr. Martinez also contends that the district court's instruction on attempt was deficient for failure to mention the requirement that a defendant take a " ' ' "substantial step ... strongly corroborative of the firmness of the defendant's criminal intent" ' " before being convicted of an attempt. *See* Martinez' Br. at 28 (quoting *United States v. Green,* 511 F.2d 1062, 1072 (7th Cir.) (quoting *United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir. 1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975)), *cert. denied,* 423 U.S. 1031, 96 S.Ct. 561, 562, 46 L.Ed.2d 404, 405 (1975)).

■ In describing the elements necessary to find a defendant guilty of criminal attempt, this court has applied the *Mandujano* formulation of attempt:

"First, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting. . . .

Second, the defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime. A substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent."

*United States v. Rovetuso,* 768 F.2d 809, 821 (7th Cir.1985) (quoting *Green,* 511 F.2d at 1072), *cert. denied,* 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986). This same basic formulation of the elements of the offense is followed in other circuits.[14] In *Rovetuso,* this court upheld an attempt

instruction that "essentially tracked the *Mandujano* rule," and that did mention the "substantial step" requirement. *Id.* at 822; *see also United States v. Clay,* 495 F.2d 700, 707 (7th Cir.) (upholding an attempt instruction that contained the substantial step language), *cert. denied,* 419 U.S. 937, 95 S.Ct. 207, 42 L.Ed.2d 164 (1974). Other circuits have approved identical or similar instructions.[15] These cases, however, have not focused on the language at issue here. Indeed, there is a dearth of authority as to whether the "substantial step" language is essential to the instruction.[16] Only the Ninth Circuit has held squarely that, at least when counsel makes timely objection, such terminology is essential. *United States v. Taylor,* 716 F.2d 701, 711–12 (9th Cir.1983).[17] Here, the jury was instructed

**14.** *See, e.g., United States v. Dworken,* 855 F.2d 12, 16–17 (1st Cir.1988); *United States v. Ivic,* 700 F.2d 51, 66 (2d Cir.1983); *United States v. Pelton,* 835 F.2d 1067, 1074 (4th Cir.1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. August,* 835 F.2d 76, 77–78 (5th Cir.1987); *United States v. Williams,* 704 F.2d 315, 321 (6th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *United States v. Wagner,* 884 F.2d 1090, 1095–96 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *United States v. Taylor,* 716 F.2d 701, 711 (9th Cir.1983); *United States v. Savaiano,* 843 F.2d 1280, 1296 (10th Cir.), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988); *United States v. Collins,* 779 F.2d 1520, 1533 (11th Cir. 1986).

**15.** *See, e.g., United States v. Manley,* 632 F.2d 978, 988 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *United States v. August,* 835 F.2d 76, 77–78 (5th Cir.1987); *United States v. Wagner,* 884 F.2d 1090, 1095–96 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *United States v. Savaiano,* 843 F.2d 1280, 1297 n. 6 (10th Cir.), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988); Manual of Model Criminal Jury Instructions for the Ninth Circuit § 5.03 (1989).

**16.** This circuit never has ruled squarely on the matter. *But see United States v. Clay,* 495 F.2d 700, 707 (7th Cir.) (holding that the district court did not have to draw explicitly the distinction between preparation and attempt, but also commenting that the defendants "were entitled to have the question of an attempt . . . submitted to the jury with appropriate instructions covering whether the conduct of the men had reached the point where an overt act directly tending to effect the commission of the substan-

tive offense . . . and strongly corroborative of criminal purpose . . . had been committed"), *cert. denied,* 419 U.S. 937, 95 S.Ct. 207, 42 L.Ed.2d 164 (1974) (citations omitted). There is no committee comment accompanying the circuit pattern instruction on attempt. Arguably, the omission of the "substantial step" terminology may be grounded in the assumption that whether the step is substantial is a matter of law. *Cf. United States v. Whyte,* 699 F.2d 375, 379 (7th Cir.1983) (in a prosecution for filing false tax return, the issue of whether a particular item is "material" is a question of law for the court to decide); *United States v. Raineri,* 670 F.2d 702, 718 (7th Cir.) (the materiality of a false statement under a perjury charge is a question of law for the court to decide), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982). *But see United States v. Ivic,* 700 F.2d 51, 68 (2d Cir.1983) (expressing the view that the determination of whether conduct constitutes "a substantial step" is a "central task" from which "[j]urors should not be distracted"). Because we rest our decision on a plain error analysis, we need not resolve this matter definitively.

**17.** We note that, on the authority of *Taylor,* the pattern instruction in 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 14.21 has been changed to substitute the wording "substantial step" in place of the "some act" formulation that appeared in the earlier edition. *Compare* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 14.21 (3d. ed. 1977) (using the "some act" formulation) *with id.* (Supp.1990) (using the "substantial step" formulation); *see also* 1 S. Saltzburg, H. Perlman & J. Potuto, Federal Criminal Jury Instructions ch. 12 (Supp.1990) (using the "substantial step" formulation); 1 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions

that an attempt means "wilfully to do *some act* in an effort to bring about or accomplish something the law forbids." Tr. at 538 (emphasis supplied). Mr. Martinez failed to object to the instruction at trial. Therefore, we review the record under the plain error standard. In order to constitute plain error, the alleged error must result in a " 'miscarriage of justice' " of such magnitude that the defendant probably would have been acquitted absent the error. *United States v. Smith,* 869 F.2d 348, 356 (7th Cir.1989) (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). Under this standard, we do not believe that reversal is justified. *See United States v. Conway,* 507 F.2d 1047, 1052 (5th Cir.1975) (upholding the "some act" formulation identical to the one at issue here under a "plain error" standard); *see generally Pope v. Illinois,* 481 U.S. 497, 503 & n. 7, 107 S.Ct. 1918, 1922 & n. 7, 95 L.Ed.2d 439 (1987) (under a charge of obscenity, instruction that erroneously directed jurors to use a contemporary community standard rather than a reasonable person standard to measure the value prong of the obscenity test was not necessarily reversible error; convictions may be affirmed despite instructional errors concerning standard of proof by which elements of crime must be found); *Rose v.*

*Clark,* 478 U.S. 570, 579–80, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986) (instructional error that impermissibly shifted the burden of proof on the issue of malice under a murder charge may constitute harmless error); *United States v. Kerley,* 838 F.2d 932, 938 (7th Cir.1988) (failure to instruct clearly on an element of a crime is not necessarily plain error), *opinion modified on other grounds,* 838 F.2d at 841. The evidence that Mr. Martinez had taken a substantial step strongly corroborative of his criminal intent was so strong that any error resulting from the district court's omission of the "substantial step" language did not rise to the level of plain error.[18] The record shows that Mr. Martinez ordered several hydraulic jacks for Mr. Valencia, that he assisted in the installation of at least one of these devices in a sophisticated storage compartment for cocaine, and that he flew across the country in search of this equipment. Moreover, the evidence shows that Mr. Martinez assisted in the attempted purchase of cocaine by transporting large sums of money back to Mr. Valencia's house and assisting in the transaction in an effort to close the cocaine deal. These acts were strongly corroborative of Mr. Martinez' intent to facilitate the criminal act of attempted possession of cocaine with intent to distribute.[19]

¶ 10.02 (1990) (using the "substantial step" formulation). The pattern jury instructions published by the Federal Judicial Center do not include an instruction on attempt. *See* Federal Judicial Center, Pattern Criminal Jury Instructions (1988).

**18.** Despite Mr. Martinez' contention that the jury convicted him of aiding and abetting Mr. Valencia's attempted possession with intent to distribute, we have no difficulty in concluding that the evidence against Mr. Martinez was strong enough to convict him either on an aiding and abetting theory or a straight attempt theory. *See supra* note 8.

**19.** *See, e.g., United States v. Fleming,* 677 F.2d 602, 609 (7th Cir.1982) (defendant took "substantial step" for purpose of attempted possession with intent to distribute when he showed up on drug dealer's doorstep with $10,000 cash in hand); *United States v. Pennyman,* 889 F.2d 104, 107 (6th Cir.1989) (person may take "substantial step" for purpose of conviction for attempted possession with intent to distribute

even though he has failed to take possession of the drugs); *United States v. Dworken,* 855 F.2d 12, 16–23 (1st Cir.1988) (extensive negotiations over narcotics, viewing drugs, and haggling over price was strongly corroborative of criminal intent to support conviction for attempted possession with intent to distribute); *United States v. Mandujano,* 499 F.2d 370, 372 n. 3, 378–79 (5th Cir.1974) (transfer of money in contemplation of heroin sale constituted substantial step strongly corroborative of the firmness of the defendant's intent to distribute, even though no drugs changed hands), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); *see also, Dworken,* 855 F.2d at 21 (collecting cases). We also have no difficulty in concluding that Martinez' acts went beyond "mere preparation," as that term has been used in various formulations of attempt. *See Mandujano,* 499 F.2d at 372–76 (5th Cir.1974); *United States v. Noreikis,* 481 F.2d 1177, 1181–82 (7th Cir.1973) (for purposes of conviction for attempting to manufacture a controlled substance, defendants who had procured chemicals necessary to manufacture a controlled substance were deemed to have taken

**686**

### E. *Failure to Define Possession*

■ Mr. Martinez also argues that the district court erred in failing to define "possession" within the jury instructions. Mr. Martinez contends on appeal, as he did below, that an instruction should have been given to distinguish the concepts of actual possession from constructive possession. The district court refused this instruction on the basis that the distinction between actual and constructive possession was irrelevant in the case. We agree with the district court. Mr. Martinez and Mr. Valencia were charged with *attempted* possession. To require the jury to find either actual or constructive possession in order to find Mr. Martinez guilty would obliterate the distinction between attempt and the completed offense. We agree with Mr. Martinez (and the cases he cites) that it is error to fail to instruct the jury on all the essential elements of the offense; however, neither actual nor constructive possession is an essential element of the offense with which he was charged. The essential element is *attempted* possession, which by definition means that the defendant did not commit the completed offense.[20]

Moreover, Mr. Martinez could have been convicted for aiding and abetting Mr. Valencia's attempted possession of cocaine. We recently have noted that one who aids and abets another's possession of drugs with intent to distribute need not obtain either actual or constructive possession of the drugs in order to be found guilty as an aider and abettor. *United States v. McNeese,* 901 F.2d 585, 609 (7th Cir.1990); *United States v. Wesson,* 889 F.2d 134, 135 (7th Cir.1989); *United States v. Moya–Gomez,* 860 F.2d 706, 761 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3221, 106

L.Ed.2d 571 (1989). It follows with even more logical force that one who aids and abets an *attempted* possession need not have either actual or constructive possession. And because the principal, Mr. Valencia, was charged only with attempted possession, the prosecution also was not required to prove that Mr. Valencia had either actual or constructive possession. Thus, there was no need in the jury instructions to define either actual or constructive possession.

### F. *Refusal to Give Mr. Martinez the "Minimal" rather than "Minor" Participant Adjustment*

■ Finally, Mr. Martinez challenges the district court's application of section 3B1.2 of the Federal Sentencing Guidelines. Specifically, he argues that he should have received a four-level "minimal" participant adjustment under section 3B1.2(a) rather than the two-level adjustment the district court awarded him under 3B1.2(b) for being a "minor" participant in the offense. This argument is meritless. We shall reverse a district court's findings and determinations under section 3B1.2 only if they are clearly erroneous. *United States v. Tholl,* 895 F.2d 1178, 1186 (7th Cir.1990). We certainly cannot say that the district court's decision to award Mr. Martinez a "minor" rather than a "minimal" participant adjustment was clear error. The Commentary to section 3B1.2 states that "[t]he determination whether to apply subsection (a) [the minimal participant adjustment] or subsection (b) [the minor participant adjustment] ... *is heavily dependent upon the facts of the particular case.*" § 3B1.2 *(Commentary, Background)* (em-

a step beyond "mere preparation"), *vacated in part on other grounds, cert. denied in part,* 415 U.S. 904, 94 S.Ct. 1398, 39 L.Ed.2d 461 (1974). As we cautioned in *Noreikis,* however, "the semantical distinction between preparation and attempt is one incapable of being formulated in a hard and fast rule. The procuring of the instrument of the crime might be preparation in one factual situation and not in another." 481 F.2d at 1181; *see also United States v. Clay,* 495 F.2d 700, 707 (7th Cir.), *cert. denied,* 419 U.S. 937, 95 S.Ct. 207, 42 L.Ed.2d 164 (1974). The First Circuit recently has echoed the sentiment

of some courts and commentators that "it is difficult, if not impossible, to distinguish preparation from attempt, and that 'attempt' in fact includes much preparatory conduct." *Dworken,* 855 F.2d at 19. In light of this dilemma, the First Circuit suggests that the imprecise "mere preparation" inquiry is not as important as the underlying policy question that the "mere preparation" formulation was designed to answer: whether the defendant's behavior strongly corroborates a criminal intent. *Id.*

**20.** *See supra* note 19.

phasis supplied). Mr. Martinez contends that he is less culpable than the sample minimal participant described in *Application Note* 2 to section 3B1.2 who played no part in a "very large drug smuggling operation" other "than to offload part of a single marihuana shipment." § 3B1.2 *Application Note* 2. Mr. Martinez argues that his role was less serious because he "handled no drugs, was unaware of the scope of the operation, and did nothing other than assist in the creation of a storage area." Martinez' Br. at 34. Mr. Martinez overlooks the fact that, in the offense with which he and Mr. Valencia were charged, no one handled drugs. Moreover, Mr. Martinez seeks to minimize his conduct by comparing it to that of some unspecified "group" whose existence and activities are not a part of the record. The section 3B1.2 adjustment requires us to focus on the defendant's "role in *the offense*," rather than unspecified criminal conduct that is not part of the offense. Federal Sentencing Guidelines § 3B1.2 (emphasis supplied); *United States v. Tetzlaff,* 896 F.2d 1071, 1074 (7th Cir.1990). Finally, his extensive participation in the acquisition of equipment and construction of a sophisticated storage compartment suggests that he had complete knowledge of the offense with which he was charged and that he made a substantial effort to see the criminal enterprise succeed. In light of all these circumstances, the district court did not clearly err in finding Mr. Martinez a minor, rather than a minimal, participant.

### III

### Mr. Valencia's Appeal

#### A. *The Instruction on Attempt*

■ Mr. Valencia argues that the district court erred in giving several jury instructions and that the cumulative effect of this error was to diminish the govern-

ment's burden of proof and to allow his conviction under less than the "beyond a reasonable doubt" standard of proof. The first such instruction Mr. Valencia submits was erroneous was the attempt instruction. Mr. Valencia contends that this instruction was deficient for its failure to mention that a "substantial step" beyond "mere preparation" is required in order to convict a person for an attempt. The instruction at issue read as follows:

> To attempt an offense means wilfully to do some act in an effort to bring about or accomplish something the law forbids.

Tr. at 538. Because Mr. Valencia failed to object to this instruction below, he is precluded from raising this objection on appeal absent a showing of plain error. *McNeese,* 901 F.2d at 608; *United States v. Kerley,* 838 F.2d 932, 935–36 (7th Cir.1988), *opinion modified on other grounds,* 838 F.2d at 841.[21] For the reasons discussed regarding Mr. Martinez' identical objection, *supra* pp. 683–85, we conclude that the omission of a "substantial step" discussion was not plain error in Mr. Valencia's case. The evidence showed that he already had negotiated the purchase of 150 kilograms with the undercover agent, had obtained a substantial sum of money with which to make his "downpayment" on the purchase, had modified his truck to enable him to haul large concealed quantities of cocaine, and had supervised the construction of an elaborate storage space in his garage for the cocaine. The evidence against Mr. Valencia was overwhelming that he had taken a substantial step " 'strongly corroborative of the firmness of [his] criminal intent.' " *United States v. Rovetuso,* 768 F.2d 809, 821 (7th Cir.1985) (quoting *United States v. Green,* 511 F.2d 1062, 1072 (7th Cir.), *cert. denied,* 423 U.S. 1031, 96 S.Ct. 561, 562, 46 L.Ed.2d 404, 405 (1975)), *cert. denied,* 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986); *see also United States v. Conway,* 507 F.2d 1047, 1052 (5th Cir.1975) (uphold-

---

21. In his appellate brief, Mr. Valencia's counsel contends that he objected to the attempt instruction at issue. Valencia's Br. at 15–16. However, the objections cited by Mr. Valencia's counsel are to a different instruction and are general objections that a charge of attempted possession is not a "constitutional charge," and

that attempted possession is not a crime. Tr. at 385–87, 398–400. Moreover, when the district court asked counsel for Mr. Valencia whether, assuming that attempt was a crime, the instruction at issue accurately presented the attempt issue, counsel responded that the instruction was accurate. Tr. at 406.

ing the "some act" formulation identical to the one at issue hereunder a "plain error" standard).

B. *The Conscious Avoidance Instruction*

■ Mr. Valencia next argues that the district court erred in giving an "ostrich" or "conscious avoidance" instruction without giving a limiting instruction to make clear that this instruction applied only to defendant Martinez and not to Mr. Valencia. *See supra* p. 679 for the text of the conscious avoidance instruction. The essence of Mr. Valencia's argument here is that, because it was clear that Mr. Valencia either knowingly negotiated the cocaine deal or did not, an ostrich instruction was not appropriate in his case. We have no quarrel with Mr. Valencia's proposition that an ostrich instruction is appropriate only when a defendant pleads ignorance. *See United States v. Talkington*, 875 F.2d 591, 596 (7th Cir.1989). As noted earlier, this court has explained the limited circumstances under which the conscious avoidance instruction is appropriate:

"A conscious avoidance instruction is 'properly given only when the defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance.'"

*Talkington*, 875 F.2d at 596 (quoting *United States v. White*, 794 F.2d 367, 371 (8th Cir.1986) (quoting *United States v. McAllister*, 747 F.2d 1273, 1275 (9th Cir.1984), *cert. denied*, 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1985))).[22]

■ It is clear that the district judge recognized that an ostrich instruction was not appropriate for Mr. Valencia. The judge allowed the instruction because he deemed it appropriate in light of Mr. Martinez' defense. Tr. at 411–15. He refused Mr. Valencia's request for a limiting in-

struction because he seemed to think there was no danger that Mr. Valencia would be convicted based on the ostrich instruction. *Id.* at 413–14. We cannot say that the district court erred in making this judgment. *See United States v. Paiz*, 905 F.2d 1014, 1022–23 (7th Cir.1990) (rejecting a similar argument that an ostrich instruction intended for co-defendants had a prejudicial effect on a defendant who had admitted knowledge of the criminal venture).[23]

■ Moreover, even assuming that the court erred by refusing to give the limiting instruction, such error was, at most, harmless. In considering an error in a jury instruction, we must view the instructions as a whole and determine " 'whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'" *United States v. Zapata*, 871 F.2d 616, 622 (7th Cir.1989) (quoting *United States v. Jackson*, 569 F.2d 1003, 1010 (7th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978)). Here, there seems to have been no real danger that Mr. Valencia could have been convicted unfairly on the basis of the ostrich instruction. If the jury believed the government's version of the facts, it convicted Mr. Valencia on the basis of his direct intent as manifested by his negotiations with the undercover agent. If the jury had believed Mr. Valencia's version of the facts, it would have concluded that Mr. Valencia was negotiating over something totally unrelated to the purchase of cocaine (namely, the release of Diego Munoz) and would have acquitted him. Mr. Valencia does not contend that the government argued conscious avoidance as a theory under which he might be found guilty. Because the probability that the jury would have

**22.** *Accord United States v. Paiz*, 905 F.2d 1014, 1022 & n. 7 (7th Cir.1990); *United States v. Defazio*, 899 F.2d 626, 635–36 (7th Cir.); *United States v. Herrero*, 893 F.2d 1512, 1537–38 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990); *United States v. Diaz*, 864 F.2d 544, 549–50 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989); *United States v. Ramsey*, 785 F.2d 184 (7th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986).

**23.** In *Paiz*, the court also noted that the ostrich instruction's effect on the complaining defendant was "neutralized" by other instructions that were given. 905 F.2d at 1022–1023. These other instructions included a "mere presence" instruction and an instruction that the jury must give separate consideration to each count and to each defendant. *Id.* Similar instructions were given in this case.

convicted Mr. Valencia on the basis of the ostrich instruction is so remote, we conclude that there is no ground for reversal.

### C. The Aiding and Abetting Instruction

Mr. Valencia's objection to the aiding and abetting instruction [24] is very similar to his objection to the conscious avoidance instruction. His argument simply is that, because the government's theory of the case was that Mr. Valencia was the principal (and, presumably, Mr. Martinez was the accomplice), there was no one left for Mr. Valencia to aid and abet. Therefore, he argues, the district court erred in giving an aiding and abetting instruction that could not possibly have applied to him.

■ Again, even assuming for sake of argument that the district court erred in failing to specify that the aiding and abetting instruction applied only to Mr. Martinez, such error was harmless. *See Zapata*, 871 F.2d at 622. There seems to have been no real danger that Mr. Valencia would be convicted on the basis of aiding and abetting or that the jury was confused or misled by the instruction. Throughout the government's case, Mr. Valencia's conduct was portrayed as that of a principal. As Mr. Valencia points out, the government in its closing argument portrayed Mr. Valencia's conduct as that of a principal. *See* Tr. at 448. Based on the evidence against Mr. Valencia as a principal and the government's theory of the case, we conclude that the danger of Mr. Valencia's being convicted on the basis of the aiding and abetting instruction was so remote that any error in not limiting this instruction to co-defendant Martinez was harmless.

### D. Cumulative Effect of the Instructions

Mr. Valencia also argues that, viewed as a whole, the cumulative effect of these alleged instructional errors was to diminish the government's burden of proof and to present an unfair and inadequate view of the applicable law. He also suggests that the instructions as a whole were so radically defective that they directed a verdict against him. We disagree. As we have

stated, there was no real danger in this case that Mr. Valencia was convicted on the basis of the conscious avoidance or the aiding and abetting instruction. Moreover, even assuming *arguendo* that the omission of the "substantial step" language from the attempt instruction was erroneous, *see supra* pp. 683–685, it was not plain error because the omission had no probable effect on the outcome. We see no merit in the argument that these instructions either individually or collectively diluted the government's burden of proof or resulted in any prejudice to Mr. Valencia.

### E. Due Process Challenge to the Guidelines

■ Finally, Mr. Valencia argues that the Federal Sentencing Guidelines both on their face and as applied to his case violate due process because they "exhibit utter disregard" for the "human" characteristics of the individual offender. Valencia's Br. at 25. This argument has been foreclosed by our decision in *United States v. Pinto*, 875 F.2d 143, 144–45 (7th Cir.1989), where we rejected the argument that the guidelines violate due process by depriving a defendant of an individualized sentence. *See also United States v. Tholl*, 895 F.2d 1178, 1180 n. 3 (7th Cir.1990) (citing cases from other circuits that have reached similar conclusions).

### Conclusion

For the reasons stated above, the convictions of Jose Javier Valencia and Ivan Dario Martinez–Valencia are affirmed.

AFFIRMED.

---

**24.** *See supra* p. 680 for the text of the aiding and abetting instruction.